OPINION
{¶ 1} Appellant, John T. Peacock, appeals from the trial court's judgment convicting him of one count of possession of crack cocaine in violation of R.C. 2925.11(C)(4)(c). Appellant also appeals from the trial court's sentencing entry. We affirm in part, vacate appellant's sentence and remand for resentencing.
 {¶ 2} On the evening of November 28, 2001, Officer Eric Kacvinsky of the Painesville Police Department was on patrol in the Jefferson Street area of Painesville. Officer Kacvinsky saw appellant walking up and down Jefferson Street. Officer Kacvinsky turned his patrol car around and saw appellant talking to John Gibson. Officer Kacvinsky did not recognize appellant, but did recognize Mr. Gibson. Officer Kacvinsky testified that he knew Gibson to be involved in crime and drug trafficking.
 {¶ 3} When Mr. Gibson saw Officer Kacvinsky he left the area. Officer Kacvinsky went around the block and stopped Mr. Gibson and spoke to him. Mr. Gibson said that he was in the area visiting relatives. Officer Kacvinsky went back around the block and saw appellant walking down Kerr Avenue. Officer Kacvinsky approached appellant to ascertain his identity.
 {¶ 4} As Officer Kacvinsky exited his patrol car he saw a small white object fall out of appellant's right hand The object landed on the sidewalk right on the edge of the grass. Officer Kacvinsky called appellant over to him. Officer Kacvinsky talked to appellant while waiting on other officers to arrive. After back up arrived Officer Kacvinsky retrieved the object appellant had dropped. The object was a Tylenol bottle that contained 7.1 grams of crack cocaine.
 {¶ 5} Appellant was indicted for possession of crack cocaine in violation of R.C. 2925.11(C)(4)(c), tried by a jury and convicted. At a sentencing hearing the trial court sentenced appellant to four years in prison and imposed a fine of $5,000.[1] The trial court's sentencing entry also suspended appellant's driver's license for four years, stated that appellant could be subject to post release control, and ordered appellant to pay court costs.
 {¶ 6} Appellant appeals his conviction and sentence asserting three assignments of error:
 {¶ 7} "[1.] The trial court erred by adding punishment in the judgment entry of sentence."
 {¶ 8} "[2.] The trial court erred by imposing costs."
 {¶ 9} "[3.] Defendant was denied the effective assistance of counsel when his counsel failed to file a motion to suppress evidence in violation of his constitutional rights guaranteed by the United States and Ohio Constitutions."
 {¶ 10} In his third assignment of error appellant argues that he was denied effective assistance of counsel because his trial counsel failed to file a motion to suppress evidence obtained as a result of his stop and arrest. Because this assignment of error relates to the underlying conviction we address it first.
 {¶ 11} When we review an ineffective assistance claim the benchmark is, "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington (1984), 466 U.S. 668,686. To prevail on his claim of ineffective assistance, appellant must show that his counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed by the Sixth Amendment." Id. at 687. He must also show prejudice resulting from the deficient performance. Id. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. Appellant must show, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. We presume that counsel's conduct was within the wide range of reasonable professional assistance. Id. See, also, State v. Bradley (1989), 42 Ohio St.3d 136,143.
 {¶ 12} We need not address the two prongs of appellant's ineffective assistance claim in the order set forth in Strickland.
 {¶ 13} "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, at 697.
 {¶ 14} There are three types of police-citizen encounters: consensual encounters, Terry stops, and arrests. State v. Taylor (1995),106 Ohio App.3d 741, 747-49. A consensual encounter occurs when a police officer approaches a person in a public place, engages the person in conversation, requests information, and the person is free to refuse to answer and walk away. Id. at 747. A consensual encounter does not implicate the Fourth Amendment's protection against unreasonable searches and seizures unless the police officer has restrained the person's liberty by a show of authority or physical force such that a reasonable person would not feel free to decline the officer's request or otherwise terminate the encounter. Id. at 747-48.
 {¶ 15} A Terry stop is an investigatory detention of limited duration and purpose and can last only as long as it takes the police officer to confirm or dispel his suspicions. Id. at 748. Such a stop is valid if the officer had reasonable and articulable suspicions of criminal activity. Id. at 749.
 {¶ 16} The final type of police-citizen encounter is an arrest. For an arrest to be valid the officer must have probable cause to believe that the individual has committed an offense. Id.
 {¶ 17} The initial encounter between appellant and Officer Kacvinsky was consensual. Thus, there was no basis to support a motion to suppress.
 {¶ 18} Officer Kacvinsky testified that he knew Mr. Gibson to be involved in criminal activity; he testified that the area was known for drug trafficking. Officer Kacvinsky testified that he saw appellant drop the white object and that in his experience it was common for someone to drop drugs when approached by a police officer. Officer Kacvinsky testified that he watched the white object throughout his conversation with appellant until his back up arrived. Nothing in the record indicates that the encounter ceased to be consensual until other officer's arrived on the scene.
 {¶ 19} Officer Kacvinsky stated that after back up arrived he had other officers watch appellant while he picked up the white object. This constituted a Terry stop. Based on Officer Kacvinsky's training and experience he had reasonable suspicion to justify the stop, i.e., he testified that it was common for an individual to discard drugs when approached by an officer. This stop lasted only long enough for the officer to verify his suspicions. Thus, the stop provided no basis to justify a motion to suppress.
 {¶ 20} Finally, Officer Kacvinsky retrieved the object he saw appellant drop. As Officer Kacvinsky started to pick up the bottle appellant stated, "That's not my stuff." Officer Kacvinsky shook the bottle and it rattled. The officer testified that in his experience crack cocaine was often carried in small containers. Officer Kacvinsky field tested the substance he found in the bottle and it tested positive for crack cocaine. Thus, the arrest was supported by probable cause and provided no basis for a motion to suppress. Appellant has failed to show a reasonable probability that, but for counsel's failure to file a motion to suppress, the result of the proceeding would have been different.
 {¶ 21} Appellant also argues that Officer Kacvinsky questioned him after he was in custody and without informing him of his Miranda rights; however, appellant does not direct us to any statement elicited during this questioning that was admitted at trial. Again, appellant has failed to show a reasonable probability that, but for counsel's failure to file a motion to suppress, the result of the proceeding would have been different. Appellant's third assignment of error is without merit.
 {¶ 22} In his first assignment of error appellant argues that the trial court erred in imposing additional punishments in the sentencing entry, i.e., suspending his driver's license, subjecting him to the possibility of post release control, and requiring that he pay costs. We agree.
 {¶ 23} We may modify a sentence or vacate a sentence and remand the matter to the sentencing court for resentencing if we find by clear and convincing evidence that the sentence is contrary to law. R.C.2953.08(G)(2)(b).
 {¶ 24} R.C. 2967.28 provides in relevant part:
 {¶ 25} "(B) Each sentence to a prison term for a felony of the first degree, for a felony of the second degree, for a felony sex offense, or for a felony of the third degree that is not a felony sex offense and in the commission of which the offender caused or threatened to cause physical harm to a person shall include a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment. * * *.
 {¶ 26} "(C) Any sentence to a prison term for a felony of the third, fourth, or fifth degree that is not subject to division (B)(1) or (3) of this section shall include a requirement that the offender be subject to a period of post-release control of up to three years after the offender's release from imprisonment, if the parole board, in accordance with division (D) of this section, determines that a period of post-release control is necessary for that offender."
 {¶ 27} Thus, R.C. 2967.28(B) makes post release control mandatory for certain offenses, while R.C. 2967.28(C) grants the parole board discretion to determine if a period of post release control is necessary for other offenses. However, there is no question that post release control is a part of every sentence. See, R.C. 2929.14(F);[2] Woods v.Telb (2001), 89 Ohio St.3d 504, 513.
 {¶ 28} R.C. 2929.19(B)(3) states:
 {¶ 29} "* * * if the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall do all of the following:
 {¶ 30} "* * *
 {¶ 31} "* * *
 {¶ 32} "(c) Notify the offender that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for a felony of the first degree or second degree, for a felony sex offense, or for a felony of the third degree in the commission of which the offender caused or threatened to cause physical harm to a person;
 {¶ 33} "(d) Notify the offender that the offender may be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for a felony of the third, fourth, or fifth degree * * *.
 {¶ 34} R.C. 2929.19(B)(3) grants the trial court no discretion. The trial court is required to notify the defendant at the sentencing hearing that post release control will be or may be imposed. Woods, supra. Placing the required notice in the sentencing entry is insufficient. Thus, in the instant case the trial court erred when it failed to notify appellant of the possibility of post release control at his sentencing hearing and simply placed the notice in the sentencing entry. R.C.2929.19(B)(3)(c) and (d); R.C. 2967.28(B) and (C); Woods, supra at 513 (stating, "Further, we hold that pursuant to R.C. 2967.28(B) and (C), a trial court must inform the offender at sentencing or at the time of a plea hearing that post-release control is part of the offender's sentence.)
 {¶ 35} What is not clear is the appropriate remedy when the trial court fails to inform the defendant that post release control is part of the sentence. Some cases have held that when the trial court fails to notify the defendant of post release control at the sentencing hearing, but includes post release control in the sentencing entry, post release control is not a part of the sentence. See, e.g., State v. McAninch, 1st Dist. No. C-010456, 2002-Ohio-2347; State v. Morrissey (Dec. 18, 2000), 8th Dist. No. 77179, 2000 Ohio App. LEXIS 5963; State v. Hart (May 31, 2001), 8th Dist. No. 78170, 2001 Ohio App. LEXIS 2428; State v. Stell
(May 16, 2002), 8th Dist. No. 79850, 2002 WL 999306; State v. Fitch, 8th Dist. No. 79937, 2002-Ohio-4891; State v. Colbert, 8th Dist. No. 80631, 2002-Ohio-6315.
 {¶ 36} Other cases have held that the sentence should be vacated and the matter remand for resentencing. State v. Lattimore, 1st Dist. No. C-010488, 2002-Ohio-723; State v. Brooks (Dec. 1, 1999), 3rd Dist. No. 9-99-40, 1999 WL 1076135; State v. Miller (Dec. 22, 2000), 6th Dist. No. L-00-1037, 2000 WL 1867274; State v. Shine (Apr. 29, 1999), 8th Dist. No. 74053, 1999 WL 258193; State v. Williams (Dec. 7, 2000), 8th Dist. No. 76816, 2000 WL 1800609; State v. Rashad (Nov. 8, 2001), 8th Dist. No. 79051, 2001 WL 1400013; State v. Mallet (Nov. 15, 2001), 8th Dist. No. 79306, 2001 WL 1456479; State v. Bryant, 8th Dist. No. 79841, 2002-Ohio-2136; State v. Johnson, 8th Dist. No. 80459, 2002-Ohio-4581;State v. Jordan, 8th Dist. No. 80675, 2002-Ohio-4587. We agree with the latter.
 {¶ 37} R.C. 2953.08(G)(2)(b) permits us to remand a matter for resentencing if we find by clear and convincing evidence that the sentence was contrary to law. Further, "[c]rimes are statutory, as are the penalties therefor, and the only sentence which a trial judge may impose is that provided for by statute * * *. A court has no power to substitute a different sentence for that provided by law." State v.Beasley (1984), 14 Ohio St.3d 74, 75. When a trial court fails to impose a sentence as mandated by statute, the trial court exceeds its authority and the sentence is void. Id. Resentencing an offender to correct a void sentence does not constitute double jeopardy. Id.
 {¶ 38} Appellant also contends that remanding for resentencing in this situation chills a defendant's right to appeal. We disagree. While the state could have appealed the error in sentencing, R.C. 2953.08(B)(2), we may also recognize plain error.
 {¶ 39} Were we to simply vacate the sentencing entry's reference to post release control, we would be usurping the power of both the legislative and executive branches of our government in violation of the separation of powers doctrine. The legislature has mandated post release control, or at least the possibility of post release control, for certain offenses. R.C. 2967.28(B) and (C). Courts have no authority to alter this mandate. The legislature has also granted the executive branch the discretion to determine if certain offenders will be subject to post release control. R.C. 2967.28(C). Courts have no authority to deprive the executive branch of this discretion. By vacating the sentence without remanding for resentencing we would return to courts discretion the sentencing guidelines were to eliminate.
 {¶ 40} Finally, Crim.R. 43(A) requires the defendant to be present at sentencing except in limited circumstances. When a sentencing court imposes additional sanctions in its sentencing entry it violates Crim.R. 43(A). See State v. Bryant (May 2, 2002), 8th Dist. No. 79841, 2002 WL 962687, at ¶ 61 (stating "* * * the inclusion of post-release control in the journal entry constituted a modification of [the defendant's] sentence outside [the defendant's] presence. The courts have consistently held that it is reversible error to modify a defendant's sentence in his absence pursuant to Criminal Rule 43(A).") (Internal quotations and citations omitted.)
 {¶ 41} Here, the trial court disregarded the mandates of R.C.2929.19(B)(3) and Crim.R.43(A) when it failed to inform appellant that he was subject to post release control at his sentencing hearing. Therefore, the sentence is void.
 {¶ 42} Appellant also argues that the trial court violated Crim.R.43(A) when it failed to inform him at the sentencing hearing that his driver's license was to be suspended and that he was required to pay court costs.
 {¶ 43} R.C. 2925.11(E)(2) mandated a driver's license suspension for appellant's conviction. Former R.C. 2947.23 stated:
 {¶ 44} "In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution and render a judgment against the defendant for such costs. If a jury has been sworn at the trial of a case, the fees of the jurors shall be included in the costs, which shall be paid to the public treasury from which the jurors were paid."
 {¶ 45} Thus, the trial court was required to suspend appellant's driver's license and impose costs; however, Crim.R.43(A) required that appellant be present for his sentencing. The trial court erred by imposing these additional sanctions in the judgment entry. See, Bryant, supra. Thus, we hold that Crim.R.43(A) requires the trial court to inform the defendant, at his sentencing hearing, that his driver's license will be suspended and that he is required to pay costs. Simply adding these sanctions in the sentencing entry violates Crim.R.43(A). Appellant's first assignment of error has merit.
 {¶ 46} In his second assignment of error appellant contends that the trial court cannot impose costs on him because he is indigent. We disagree.
 {¶ 47} As discussed above, former R.C. 2947.23 required the court to impose costs. However, appellant contends that R.C. 2949.14 prohibits a court from imposing costs on an indigent defendant. This section provides:
 {¶ 48} "Upon conviction of a nonindigent person for a felony, the clerk of the court of common pleas shall make and certify under his hand and seal of the court, a complete itemized bill of the costs made in such prosecution, including the sum paid by the board of county commissioners, certified by the county auditor, for the arrest and return of the person on the requisition of the governor, or on the request of the governor to the president of the United States, or on the return of the fugitive by a designated agent pursuant to a waiver of extradition except in cases of parole violation. Such bill of costs shall be presented by such clerk to the prosecuting attorney, who shall examine each item therein charged and certify to it if correct and legal. Upon certification by the prosecuting attorney, the clerk shall attempt to collect the costs from the person convicted." (Emphasis added.)
 {¶ 49} We agree with the reasoning of the Fifth District Court of Appeals, which held:
 {¶ 50} "R.C. 2949.14 does not govern the court's ability to order costs. The statute is directed at the ability of the clerk of courts to collect the costs from the person convicted. While R.C. 2949.14 provides a collection mechanism only for non-indigent defendants, nothing in R.C.2947.23 prohibits the court from assessing costs to an indigent defendant as part of the sentence. In the event the indigent defendant at some point ceases to be indigent, the clerk could then collect costs pursuant to the procedure outlined in R.C. 2949.14. Ohio law does not prohibit a judge from including costs as part of the sentence of an indigent defendant." State v. White, 5th Dist. No. 02CA23, 2003-Ohio-2289, ¶ 9. See, also, State v. Roux, 154 Ohio App.3d 360, 2003-Ohio-5155.
 {¶ 51} Appellant also argues in his second assignment of error that O.A.C. 5120-5-03 violates the due process and equal protection clauses of the United States Constitution. This administrative code section provides a mechanism:
 {¶ 52} "* * * for withdrawing money that belongs to an inmate and that is in an account kept for the inmate by the department of rehabilitation and correction (DRC), upon receipt of a certified copy of a judgment of a court of record in an action in which an inmate was a party that orders an inmate to pay a stated obligation. * * *." Ohio Adm. Code 5120-5-03(A).
 {¶ 53} The Fourteenth Amendment to the United States Constitution prohibits a state from denying a person within its jurisdiction equal protection of the laws. Because no suspect class or fundamental right is involved in this case we apply a rational basis analysis, i.e., whether there exists a permissible governmental objective and whether the means employed is rationally related to the achievement of that objective.
 {¶ 54} Here the objective is the collection of a valid judgment. This is a permissible governmental objective. The means chosen to achieve that objective is the garnishment of an inmate's account. The procedures adopted parallel the collection procedures for non-inmate debtors but are adapted to fit the special problems associated with pursuing collections from inmates and their accounts. Bell v. Beightler (Jan. 14, 2003), 10th Dist. No. 02AP-569, 2003 WL 116146, ¶ 50. Thus, Ohio Adm. Code5120-5-03 passes the rational basis test and does not violate the equal protection clause.
 {¶ 55} Appellant also contends that Ohio Adm. Code 5120-5-03
violates his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. Garnishment procedures must afford the debtor procedural due process. Id., citing Peebles v. Clement (1980),63 Ohio St.2d 314; Community Physical Therapy v. Wayt (1994),93 Ohio App.3d 612. Due process is a flexible concept that depends on the demands of the particular situation. Bell, at ¶ 51, quoting Morrisseyv. Brewer (1972), 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484. Due process generally requires a right to notice and an opportunity to be heard at a meaningful time and in a meaningful manner. Bell, at ¶ 51, citing State v. Hochhausler (1996), 76 Ohio St.3d 455. "In cases of garnishment or attachment, this specifically includes the opportunity to present objections and exemptions to the garnishment order." Bell, at ¶ 51.
 {¶ 56} Ohio Adm. Code 5120-5-03 provides a detailed garnishment procedure. It requires the warden's designee to determine whether "the judgment and other relevant documents are facially valid." Ohio Adm. Code5120-5-03(C). The warden's designee then provides notice to the inmate of the debt and its intent to seize money from the inmate's account. Id. The notice must inform the inmate of a right to claim exemptions and the type of exemptions available under R.C. 2329.66. Id. Only after the inmate has had an opportunity to assert any exemption or defense, may money be withdrawn from the inmate's account. Id. Finally, only the amount of monthly income received in the inmate's account that exceeds ten dollars may be withdrawn to satisfy the judgment. Ohio Adm. Code 5120-5-03(E). There is no evidence in the record that this amount is insufficient to meet appellant's needs while incarcerated. Ohio AdmCode 5120-5-03
comports with the due process requirements of the Fifth andFourteenth Amendments to the United States Constitution. Appellant's second assignment of error is without merit.
 {¶ 57} For the foregoing reasons appellant's second and third assignments of error are without merit. Appellant's first assignment of error has merit. Appellant's sentence is vacated and this matter is remanded to the Lake County Court Common Pleas for resentencing consistent with this opinion.
Judith A. Christley and Diane V. Grendell, JJ., concur.
[1] Appellant subsequently filed an affidavit of indigency and the trial court amended the sentencing entry and vacated the fine.
[2] R.C. 2929.14(F) provides:
"If a court imposes a prison term of a type described in division (B) of section 2967.28 of the Revised Code, it shall include in the sentence a requirement that the offender be subject to a period of post-release control after the offender's release from imprisonment, in accordance with that division. If a court imposes a prison term of a type described in division (C) of that section, it shall include in the sentence a requirement that the offender be subject to a period of post-release control after the offender's release from imprisonment, in accordance with that division, if the parole board determines that a period of post-release control is necessary."