OPINION
{¶ 1} Appellant, James Martin, appeals from a Trumbull County Court of Common Pleas jury verdict convicting him of one count of complicity to aggravated robbery with a firearm specification, in violation of R.C.2923.03(A)(2) and (F), R.C. 2911.01(A)(1) and (2), and R.C. 2941.145(A).
 {¶ 2} On October 17, 2001, appellant was indicted by the Trumbull County Grand Jury for complicity to aggravated robbery with a firearm specification. This matter proceeded to a jury trial on May 21, 2002.
 {¶ 3} The following facts were disclosed during trial. On the evening of September 12, 2001, three men entered the North End Supermarket ("the store"), located in Warren, Ohio, Trumbull County. One of the men possessed a gun as he entered the store. After he entered the store, the gun's chamber broke open from the gun and several bullets fell to the ground. Undeterred, the three men instructed the store's employees, Vesta Clifford ("Ms. Clifford") and Mahmoud Eltibi ("Mr. Eltibi"), to "hit the ground." One of the men then demanded that Mr. Eltibi open the cash register. Mr. Eltibi complied, and the man took approximately $500 from the cash register and some Black and Mild cigars. The three men then exited the store.
 {¶ 4} Patrolman Patrick Marsico ("Ptlm. Marsico"), of the Warren City Police Department, responded to the reported robbery. At the store, Ptlm. Marsico interviewed Ms. Clifford and Mr. Eltibi and obtained a description of the three perpetrators. Ptlm. Marsico also collected five bullets which were scattered across the store's floor.
 {¶ 5} Sergeant William Boldin ("Sgt. Boldin"), of the Warren City Police Department, received a dispatch of the robbery which described the perpetrators' physical characteristics and clothing. As he drove past the Warren Heights Apartment Complex, Sgt. Boldin saw three men matching the description of the perpetrators. Sgt. Boldin pursued the individuals inside the apartment complex and ultimately apprehended and arrested one of the suspects.
 {¶ 6} The arrested suspect was later identified as Milton Lee ("Lee"). Based upon his distinctive hazel eyes and his frequent patronage of the store, Ms. Clifford picked Lee out of a photographic lineup as one of the perpetrators. Lee was questioned by the police and eventually confessed to his involvement in the robbery. He further informed the police that Jamuar Brown ("Brown") had also participated in the robbery.
 {¶ 7} Brown was subsequently arrested and ultimately admitted to his participation in the robbery. He also told the police that Freddie Washington ("Washington") and a man going by the name of James "Pops" Martin were involved in the robbery.
 {¶ 8} As a result of Lee and Brown's statements to the police, Washington and appellant were arrested. During appellant's incarceration, Detective Dewey Gray ("Det. Gray") and Sergeant Gary Vingle ("Sgt. Vingle"), of the Warren City Police Department, questioned appellant regarding his involvement in the robbery. Ultimately, appellant confessed that he was part of planning the robbery and that he drove the getaway vehicle.
 {¶ 9} Det. Gray and Sgt. Vingle then had appellant complete a written statement describing the factual events pertaining to the night of the robbery. The top portion of the written statement acknowledged that appellant waived his Miranda rights and was making the statement voluntarily. In his written statement, appellant wrote that he knew Lee, Brown, and Washington were going to "steal" something from the store, but was unaware that a gun would be used. Appellant further wrote that he assisted in the robbery as the getaway driver.
 {¶ 10} At trial, Lee and Washington identified appellant as an accomplice who helped plan the robbery and acted as the getaway driver. Lee and Washington further testified that appellant had knowledge of the gun and that, although appellant never entered the store, he had handled the gun just prior to the robbery. Brown, however, testified that appellant was not the James "Pops" Martin he had referred to in his pre-trial statement to police and denied that appellant was involved in the robbery.
 {¶ 11} Det. Gray testified with respect to his interrogation of appellant. During cross-examination, appellant's counsel cited to Defendant's Exhibit A, which was a general written summary of appellant's interrogation made by Det. Gray. Within the summary, Det. Gray noted that appellant had admitted to handling the gun just prior to the robbery. The summary further stated that appellant's admission of handling the gun was left out of the written statement "because [appellant] was on parole and couldn't be around any guns." Det. Gray's testimony explained that he allowed the written statement to infer that appellant had no knowledge of the gun because he had sympathy for appellant.
 {¶ 12} At the trial's conclusion, the jury found appellant guilty of one count of complicity to aggravated robbery with a firearm specification. Appellant was sentenced to a seven-year prison term for complicity to aggravated robbery and a consecutive three-year prison term for the firearm specification.
 {¶ 13} From this judgment, appellant filed a timely notice of appeal and sets forth the following four assignments of error for our consideration:
 {¶ 14} "[1.] The Appellant's convictions are not supported by sufficient evidence.
 {¶ 15} "[2.] The Appellant's convictions are against the manifest weight of the evidence.
 {¶ 16} "[3.] The trial court erred by failing to notify Appellant pursuant to R.C. 2929.19(B)(3) at the time of sentencing that he will be subject to post-release control pursuant to R.C. 2967.28.
 {¶ 17} "[4.] The trial court erred and abused its discretion by sentencing Appellant to a disproportionately long term of incarceration."
 {¶ 18} Appellant's first assignment of error challenges the sufficiency of the evidence relating to his conviction of a firearm specification and complicity to aggravated robbery. We will first set forth the appropriate standard of review.
 {¶ 19} When reviewing the sufficiency of the evidence to support a criminal conviction, a court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average trier of fact of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307.
 {¶ 20} Under his first assignment of error, appellant presents two issues for our review. First, appellant argues that his conviction for complicity to a firearm specification, in violation of R.C. 2941.145(A), was not supported by sufficient evidence as the record fails to establish that the gun used in the robbery was operable or could be rendered operable. Specifically, appellant contends that because the gun's chamber fell open and its bullets fell to the ground, it was not an operable firearm as defined by R.C. 2923.11.
 {¶ 21} R.C. 2941.145 provides the general statutory guidelines for convicting an individual for a firearm specification. Pursuant to R.C.2941.145(D), the word "firearm" is defined by R.C. 2923.11. Therefore, we must review the applicable definition of "firearm" and determine whether there was sufficient evidence presented to establish a firearm specification.
 {¶ 22} In relevant part, R.C. 2923.11 defines "firearm" as follows:
 {¶ 23} "(B)(1) `Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.
 {¶ 24} "(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."
 {¶ 25} In accordance with R.C. 2923.11, for an individual to be found guilty of a firearm specification, the state must prove, beyond a reasonable doubt, that the firearm at issue was either operable or could readily have been rendered operable at the time of the offense. State v.Gaines (1989), 46 Ohio St.3d 65, at syllabus. See, also, State v. Church
(June 25, 1999), 11th Dist. No. 97-L-248, 1999 Ohio App. LEXIS 2936, at 9. "Notably, the General Assembly in R.C. 2923.11(B)(2) set forth that the trier of fact may rely upon circumstantial evidence in determining whether the firearm was operable. * * * Thus, it is apparent that the General Assembly intended that the state can `rely upon all of the surrounding facts and circumstances in establishing whether a firearm was used in the commission of a felony.'" State v. Thompkins (1997),78 Ohio St.3d 380, 384-385, quoting State v. Murphy (1990),49 Ohio St.3d 206, 208.
 {¶ 26} In the case at bar, Ms. Clifford testified that one of the men had a gun when he entered the store. After he entered the store, the gun's chamber fell out scattering bullets on the floor. Moreover, Washington provided corroborative testimony that Brown entered the store with the gun and once inside the store "[t]he bullets fell out." Such testimony provides circumstantial evidence that, at the initiation of the robbery, the gun was intact and arguably capable of expelling or propelling a projectile by the action of an explosive or combustible propellant. Absent is any evidence contradicting the operability of the gun prior to the chamber falling out.
 {¶ 27} It is irrelevant that the gun may have become inoperable as the robbery proceeded. The prosecution needed only to establish that the gun was operable for a single moment during the commission of the robbery. Because the prosecution presented circumstantial evidence that the gun was apparently intact and operable at the initial moment of the robbery, such evidence was sufficient to establish a firearm specification pursuant to R.C. 2941.145(A). Thus, this portion of appellant's assignment of error is not well-taken as appellant's conviction for complicity to a firearm specification was supported by sufficient evidence.
 {¶ 28} Appellant also contends that his conviction for complicity to aggravated robbery is not supported by sufficient evidence as the record reveals that the gun used during the robbery was broken and was not used as a bludgeoning device. Therefore, appellant concludes that the gun could not be considered a "deadly weapon" pursuant to R.C. 2911.01(A).
 {¶ 29} R.C. 2911.01(A) provides the definition for aggravated robbery, to wit:
 {¶ 30} "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 31} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"
 {¶ 32} This section also states that "deadly weapon" is defined under R.C. 2923.11. R.C. 2923.11 defines a "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." Therefore, the state had the burden of proving that the gun was capable of causing death and that appellant intended to use the gun as a weapon.
 {¶ 33} Here, appellant correctly points out that there is no evidence that anyone threatened to use the gun as a bludgeon during the robbery. "Because there is no allegation or evidence that [appellant] used or threatened to use the gun as a bludgeon during the robber[y], the gun constitutes a deadly weapon only if it was a `firearm.'" State v.Boddie, 2d Dist. No. 18709, 2001-Ohio-7089, 2001 Ohio App. LEXIS 5927, at 4.
 {¶ 34} Our initial holding in appellant's first assignment of error determined that the gun was a "firearm" as defined by R.C. 2923.11(B). Therefore, it is clear that the gun used during the robbery was capable of causing death. Furthermore, Ms. Clifford testified that the gun was pointed at her during the robbery and she was instructed to "hit the ground." Such evidence demonstrates that the gun was intended to be used as a deadly weapon. Thus, this portion of appellant's first assignment of error is also not well-taken as there was sufficient evidence presented which established that the gun was a "deadly weapon" as defined by R.C.2923.11.
 {¶ 35} Based upon the foregoing analysis, there was sufficient evidence provided at trial to sustain appellant's conviction for complicity to aggravated robbery with a firearm specification. Appellant's first assignment of error is without merit.
 {¶ 36} Under his second assignment of error, appellant contends that his conviction for complicity to aggravated robbery with a firearm specification was against the manifest weight of the evidence. In support of his argument, appellant challenges the credibility of Lee and Washington, asserting that Lee was a known liar and that Washington had a strong motive to lie, as he was a juvenile and possibly avoided a bind over by testifying against appellant.
 {¶ 37} When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. Statev. Martin (1983), 20 Ohio App.3d 172, 175. See, also, State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 38} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The appellate court is to engage in a limited weighing of the evidence to determine whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v. DeHass (1967),10 Ohio St.2d 230, paragraph two of the syllabus.
 {¶ 39} When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986), 22 Ohio St.3d 120,123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 WL 286594, at 3. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id.
 {¶ 40} First, regarding appellant's contention that both Lee and Washington were not credible witnesses, we note that the jury was in the best position to view these witnesses and access their credibility. Both Lee and Washington testified and were subjected to a vigorous cross-examination that attempted to put their credibility at issue.
 {¶ 41} Moreover, there is nothing to suggest that Lee and Washington's testimony was incredible or absurd. Both witnesses testified in detail to the specific factual events that occurred on the night of the robbery. Their testimony, as to the facts, was similar and established not only that appellant was involved in planning the robbery, but that he had handled the gun, knew that it was going to be used, and acted as the getaway driver. By observing such testimony, the jury was able to view the demeanor of Lee and Washington and assign credibility. Ultimately, the jury found their testimony to be credible. Accordingly, this court will not disturb those findings on appeal, as the credibility of each witness was a critical issue for the trier of fact to determine. Statev. Ready (2001), 143 Ohio App.3d 748.
 {¶ 42} Appellant further argues that Brown's conflicting testimony that appellant was not the James "Pops" Martin that was involved in the robbery demonstrates that his convictions were against the manifest weight of the evidence. Brown's testimony at trial not only conflicted with his pre-trial statements which named appellant as a participant, but it also conflicted with the accomplices' testimony. As mentioned previously, the resolution of conflicting testimony is solely a matter for the trier of fact. Here, the jury did not believe Brown's conflicting testimony; instead the jury chose to believe the testimony of his accomplices. Thus, we will not attempt to substitute our judgment for that of the trier of fact, as the jury was in a better position to weigh the conflicting testimony and was free to believe all, part, or none of it.
 {¶ 43} Next, appellant argues that Det. Gray's testimony and written summary of appellant's interrogation conflicts with appellant's written admission. Specifically, appellant asserts that his written admission expressly stated that he had no knowledge that a gun would be used during the robbery, while Det. Gray's testimony and written summary stated that appellant did in fact have knowledge that a gun would be used.
 {¶ 44} Again, we note it is the duty of the jury to resolve conflicting evidence. The jury was in a better position to resolve this conflict. Furthermore, there was additional evidence of appellant's knowledge of the gun provided by Lee and Washington. Based upon this evidence, the jury could find that appellant was aware that a gun would be used during the robbery. Thus, we will not disturb the jury's findings on appeal.
 {¶ 45} Based upon the foregoing analysis, it is clear that the jury did not lose its way and that there was no manifest miscarriage of justice that required a new trial. Appellant's second assignment of error is without merit.
 {¶ 46} Under his third assignment of error, appellant argues that the trial court erred when it failed to inform him during the sentencing hearing that he would be subject to post release control. Appellant concedes that the trial court notified him of post release control in its sentencing entry; however, appellant maintains that the trial court was still required by statute to inform him of post release control at the sentencing hearing. Thus, appellant concludes that such error requires the reversal of his sentence and a new sentencing hearing. We agree.
 {¶ 47} R.C. 2929.19(B)(3) states:
 {¶ 48} "* * * [I]f the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall do all of the following:
 {¶ 49} "* * *
 {¶ 50} "* * *
 {¶ 51} "(c) Notify the offender that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for a felony of the first degree or second degree, for a felony sex offense, or for a felony of the third degree in the commission of which the offender caused or threatened to cause physical harm to a person[.]"
 {¶ 52} The language of R.C. 2929.19(B)(3) is mandatory rather than discretionary. See, e.g., State v. Peacock (2003), 11th Dist. No. 2002-L-115, 2003-Ohio-6772, at ¶ 34. "The trial court is required to notify the defendant at the sentencing hearing that post release control will be or may be imposed. * * * Placing the required notice in the sentencing entry is insufficient." (Emphasis added and citations omitted.) Peacock at ¶ 34. See, also, Woods v. Telb (2001),89 Ohio St.3d 504. Such holding is in accordance with the Ohio Supreme Court's ruling in State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165. InComer, the Court held that following a defendant's felony conviction, the trial court is required to make the statutorily enumerated findings at the sentencing hearing prior to issuing a consecutive sentence or imposing a non-minimum sentence on a first time offender. Id. at paragraphs one and two of the syllabus.
 {¶ 53} Our review of the transcript of the sentencing hearing fails to establish that the trial court informed appellant that he would be subject to post release control. Nevertheless, the trial court proceeded to issue post release control as part of its sentencing entry. Accordingly, the trial court erred by failing to notify appellant that he would be subject to post release control at his sentencing hearing.
 {¶ 54} Moreover, this court has recently resolved a conflict regarding the appropriate remedy when the trial court has failed to inform the defendant that post release control is part of the sentence. In Peacock,
we held that the appropriate remedy is to vacate the sentence and remand the matter for resentencing. Id. at ¶ 36. In doing so, we reasoned that "R.C. 2953.08(G)(2)(b) permits us to remand a matter for resentencing if we find by clear and convincing evidence that the sentence was contrary to law. Further, `crimes are statutory, as are the penalties therefor, and the only sentence which a trial judge may impose is that provided for by statute * * *.' * * * When a trial court fails to impose a sentence as mandated by statute, the trial court exceeds its authority and the sentence is void. * * * Resentencing an offender to correct a void sentence does not constitute double jeopardy. * * *" (Citations omitted.)Peacock at ¶ 38.
 {¶ 55} In accordance with our previous decision, we now hold that the trial court erred by failing to inform appellant of post release control during the sentencing hearing and, therefore, the sentence is vacated and this matter is remanded for resentencing. Appellant's third assignment of error is with merit.
 {¶ 56} Under his fourth assignment of error, appellant contends that the trial court abused its discretion by disproportionately sentencing him to seven years of incarceration for complicity to aggravated robbery. In support of this argument, appellant notes that: 1) he merely drove the principals to and from the robbery and never entered the store; and 2) of the three principals who entered the store, he received the longest term of incarceration.
 {¶ 57} A reviewing court will not reverse a sentence unless an appellant establishes that the trial court failed to comply with the applicable statutory requirements or that it abused its discretion by failing to consider sentencing factors. State v. Rupert, 11th Dist. No. 2001-L-169, 2002-Ohio-7268, at ¶ 5. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v.Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 58} Under R.C. 2929.11, the purposes of criminal sentencing are to punish the offender and to protect the public from future crime. To ensure that the sentence imposed is consistent with these purposes, a trial court must consider such things as the seriousness of the offender's conduct, the offender's criminal record, and the circumstances under which the crime was committed. R.C. 2929.12. The trial court is granted broad discretion in determining the most effective way to uphold the sentencing objectives when sentencing a defendant. Id.
 {¶ 59} We first note that R.C. 2929.14 delineates guidelines for the length of a prison term. According to R.C. 2929.14(A)(1), the minimum prison term for a first degree felony is three years, while the maximum prison term is ten years. Complicity to aggravated robbery is a first degree felony. See, e.g., State v. Glenn, 11th Dist. No. 2001-L-098, 2002-Ohio-5865, at ¶ 4.
 {¶ 60} Clearly, appellant's seven-year term of incarceration for complicity to aggravated robbery was within the statutory guidelines of R.C. 2929.14(A)(1) and within the broad sentencing discretion of the trial court. Nevertheless, appellant attempts to argue that because he merely drove the principals to and from the store, his sentence of seven years was not justified. The record, however, demonstrates that appellant was the ring leader and the motivating force of the robbery. Specifically, there was evidence that appellant coordinated the robbery to collect drug money that the principals owed him.
 {¶ 61} Based upon the foregoing, the trial court was within the statutory sentencing guidelines of R.C. 2929.14(A)(1) to sentence appellant to a seven year prison term for complicity to aggravated robbery. Thus, this portion of appellant's fourth assignment of error is not well-taken.
 {¶ 62} Appellant further argues that the sentence was disproportionate when compared to the prison terms of the principals, Lee, Washington, and Brown. Generally speaking, the "statutory sentencing guidelines are intended to reduce judge-specific sentencing variations so that offenders can expect a consistent range of sentences for similar conduct." Statev. Earle, 11th Dist. No. 2001-L-159, 2002-Ohio-4510, at ¶ 17. Common sense dictates that, despite being guilty of essentially the same crime, the three perpetrators involved in the robbery should not automatically receive the same sentence. See, e.g., State v. Rupert, 11th Dist. No. 2001-L-169, 2002-Ohio-7268, at ¶ 17 (Christley, J., concurring.) The record before us establishes that appellant had a prior criminal history. In fact, at the time appellant committed complicity to the instant aggravated robbery, he was on probation for a prior burglary conviction.
 {¶ 63} Moreover, the record fails to clearly reveal the personal or criminal backgrounds of the principals. Accordingly, appellant is unable to present evidence that would substantiate his claim of a disproportionate sentence. That being the case, this cannot be reviewed on a direct appeal. Appellant's fourth assignment of error is without merit.
 {¶ 64} Based upon the foregoing, appellant's first, second, and fourth assignments of error are without merit. However, appellant's third assignment of error is with merit. Therefore, we hereby affirm appellant's conviction of complicity to aggravated robbery with a firearm specification, but vacate the trial court's sentence, and remand this matter for resentencing in accordance with our opinion.
Grendell, J., Nader, J., Ret., Eleventh Appellate District, sitting by assignment, concur.