**In re TIBER, Delinquent Child.**

[Cite as *In re Tiber,* 154 Ohio App.3d 360, 2003-Ohio-5155.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 03 BE 33.

Decided Sept. 23, 2003.

Frank Pierce, Belmont County Prosecuting Attorney, and Thomas Ryncarz, Assistant Prosecuting Attorney, for appellee.

Edward Sustersic, for appellant.

---

VUKOVICH, Judge.

{¶ 1} Defendant-appellant Justin Tiber appeals from the judgment of the Belmont County Common Pleas Court, Juvenile Division, which adjudicated him delinquent for committing negligent assault and which sentenced him to ninety days in juvenile detention. The issues before us concern the sufficiency and the weight of the evidence to support the adjudication and whether the maximum sentence for third-degree misdemeanor negligent assault is sixty days as it is in the adult system. For the following reasons, the judgment of the trial court is affirmed.

## STATEMENT OF FACTS

{¶ 2} On September 15, 2002, Tito Ewart was visiting Justin Tiber at Justin's parents' house. Tito was on the front porch letting the dog in when he was shot in the right forearm and right side by a pump action twelve-gauge shotgun, which sixteen-year-old Justin was handling. He said he wanted to show his father's new gun to Tito, but it went off.

{¶ 3} Justin was charged with negligent assault. The case was tried to the juvenile court on March 20, 2003. The court adjudicated Justin delinquent for committing negligent assault. Justin filed a notice of appeal from the adjudication; however, that appeal was dismissed by this court, since the disposition had not yet occurred. The dispositional hearing proceeded on April 22, 2003, after which the juvenile court sentenced Justin to ninety days in juvenile detention. Justin (hereinafter "appellant") filed timely notice of appeal.

## ASSIGNMENT OF ERROR NUMBER ONE

{¶ 4} Appellant presents two assignments of error, the first of which alleges:

{¶ 5} "The trial court erred by convicting the appellant because the evidence failed to establish beyond a reasonable doubt that appellant's conduct constituted a substantial lapse of due care and is against the manifest weight of the evidence."

{¶ 6} Appellant was convicted of negligent assault. The elements of this offense relevant to the case at hand are negligently causing physical harm to another by means of a deadly weapon. R.C. 2903.14(A). The culpable mental state of negligence is defined as follows:

{¶ 7} "(D) A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist."

{¶ 8} As explained by the 1973 Legislative Service Commission Note to R.C. 2901.22(D), the culpable mental state of negligence is different in criminal law than it is in tort law:

{¶ 9} "A person is said to be negligent under the section when, because of a substantial slip from the standard of care required of him under the circumstances, he fails to notice or take steps to evade a risk that his conduct may cause a certain result or be of a certain nature, or that certain circumstances may exist. Although the definition of 'negligence' in the new code is structured similarly to the definition of ordinary negligence used in tort law, it defines a higher degree

of negligence than ordinary negligence. For one to be negligent under this section he must be guilty of a substantial departure from due care, whereas ordinary negligence merely requires a failure to exercise due care."

{¶ 10} Appellant claims that the state failed to prove a substantial lapse of due care beyond a reasonable doubt and the court's decision on such matter was against the weight of the evidence, citing *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, for both propositions. Specifically, appellant argues that the only evidence is that he took the shotgun off the wall and that it may have been in his hands when it discharged. He notes that even if he could be considered tortiously negligent, this is insufficient for criminal negligence. Appellant emphasizes that there is no evidence that he loaded it, that he knew it was loaded, that he was playing with it, that he was running with it, that he pointed it at Tito, or that he had his finger on the trigger. He states that he should have been able to trust his father that a gun hanging on the wall in the living quarters could be safely handled. Appellant argues that merely handling a gun that happens to go off and happens to shoot someone is not criminal negligence, imploring that the burden is on the state to show why the gun discharged.

{¶ 11} First, we note that although the sufficiency test set forth in *Jenks* is still good law, the holding that weight and sufficiency use the same test is no longer good law. As we have warned numerous times, sufficiency of the evidence and weight of the evidence are distinct concepts with different definitions and different tests. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

{¶ 12} Sufficiency of the state's evidence is a question of the adequacy of that evidence. *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541. In determining this question of law, we view the evidence in the light most favorable to the prosecution and determine whether any rational factfinder could find the essential elements proven beyond a reasonable doubt. Id. See, also, *State v. Goff* (1998), 82 Ohio St.3d 123, 128, 694 N.E.2d 916.

{¶ 13} Appellant's written statement to police disclosed that he grabbed his father's new shotgun off the wall and started to walk to the porch to show his friend. He explained that he saw the front door close and "as I was walking, the gun went off, and I heard him yell 'you shot me' and I dropped the gun on the floor and called 911 right away. I don't know how the gun went off or why the safety was off." The responding officer testified that when he examined the gun, it still contained two live buckshot rounds.

{¶ 14} The line between ordinary and criminal negligence is to be distinguished by the trier of fact by considering the surrounding circumstances. *State v. Mechlem* (Jan. 24, 1996), 1st Dist. No. C–950328, 1996 WL 27975.

Reasonable inferences can be drawn to find a criminally negligent culpable mental state. Id. See, also, *In re Bixler* (Sept. 11, 1998), 11th Dist. No. 97–T–0087, 1998 WL 637691 (holding that the question of whether a lapse of due care is substantial is a question for the factfinder).

{¶ 15} As the trial court noted, appellant did not ensure that the gun was unloaded or at least that the safety was engaged before grabbing the gun. These failures establish that "he fail[ed] to notice or take steps to evade a risk that his conduct may cause a certain result or be of certain nature." See R.C. 2901.22(D), 1973 Legislative Service Commission Note. Moreover, appellant carried the weapon pointing it where he knew his friend was standing rather than pointing it downward. Notably, appellant was not a small child; rather, he was one month shy of his seventeenth birthday.

{¶ 16} Additionally, appellant's statement implies that he was familiar with his father's cache of weapons, as he stated that his friend "usually checks out" his father's new guns. A firearm should never be pointed in any person's direction, especially where the gun was not established to be unloaded and the safety was not checked. Violating this rule and causing one to be shot can constitute a substantial lapse of due care. See R.C. 2903.05, 1973 Legislative Service Commission Note (stating that negligent homicide, the same as negligent assault with the exception of the end result, can exist where, for instance, a hunter fails to make sure of his target or a person points a firearm in jest and kills the victim).

{¶ 17} Moreover, contrary to appellant's suggestions, a rational trier of fact could find that the gun fired because appellant's finger touched the trigger, which can also be considered a substantial lapse from the standard of due care required under the circumstances; this standard being that one should never place one's finger on the trigger of a firearm unless one intends to shoot it. Appellant and others in his situation are expected to realize this rule and abide by it.

{¶ 18} In viewing all of these facts and circumstances in the light most favorable to the state, a rational trier of fact could find that Tito was shot due to appellant's criminal negligence. See *Middletown v. Campbell* (1990), 69 Ohio App.3d 411, 417, 590 N.E.2d 1301 (whether the lapse was substantial is to be gauged by the trier of fact from all surrounding circumstances). As such, the evidence was sufficient to support the delinquency adjudication.

 {¶ 19} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." Id., 78 Ohio St.3d at 387, 678 N.E.2d 541. Reviewing courts will not reverse a decision on manifest-weight grounds unless after evaluating the record, weighing the evidence and the inferences that can be draw therefrom, and considering the witnesses' credibility, the court determines that

the trial court "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. Only in exceptional cases where the evidence weighs heavily against the conviction should the court grant a new trial on manifest weight grounds. Id. In conducting this review, the court operates under the premise that determinations of witness credibility are primarily for the factfinder. *State v. Hill* (1996), 75 Ohio St.3d 195, 205, 661 N.E.2d 1068, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 227 N.E.2d 212.

{¶ 20} Here, we cannot say that the juvenile court clearly lost its way in determining that criminally negligent conduct existed where appellant handled a shotgun in a manner that resulted in a shot being fired at a person who was known to be standing in front of the weapon. The fact that appellant orally changed his written statement to say that the gun fired when he dropped it does not mandate a court to believe this varying statement. Furthermore, the fact that appellant's written statement says that he does not know how the gun went off does not mandate a court to believe that his finger did not touch the trigger. Accordingly, the court's decision was not against the manifest weight of the evidence. Thus, appellant's first assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER TWO

{¶ 21} Appellant's second assignment of error provides:

{¶ 22} "The trial court abused its discretion and erred in committing the appellant to a ninety-day detention."

{¶ 23} After setting forth the elements of the offense, R.C. 2903.14 explains that negligent assault is a misdemeanor of the third degree. R.C. 2903.14(B). In the general criminal law, the term of imprisonment for a third-degree misdemeanor is no more than sixty days. R.C. 2929.21(B)(3). Thus, appellant claims that his ninety-day sentence was improper.

{¶ 24} The state counters by noting that separate juvenile law applies. Specifically, the state points to R.C. 2152.04, which provides that a child who is alleged to be or adjudicated delinquent may be confined in a place of juvenile detention for a period not to exceed ninety days. Appellant responds that this ninety-day reference is merely a maximum in general for juvenile misdemeanants, which would be relevant only to first-degree misdemeanors, since they normally carry a six-month maximum sentence. See R.C. 2929.21(B)(1).

{¶ 25} "[T]here is a stark difference between criminal and juvenile law. The juvenile code allows more discretion in fashioning dispositional sentences." *In re Kelly* (Nov. 7, 1995), 10th Dist. No. 95APF05–613, 1995 WL 656944. As the Supreme Court has held, a juvenile court proceeding is a civil action. *In re*

*Anderson* (2001), 92 Ohio St.3d 63, 748 N.E.2d 67. Hence, merely because negligent assault is generally considered a third-degree misdemeanor and merely because a separate adult criminal law specifies that the maximum jail sentence for a third-degree misdemeanor is sixty days does not mean that a juvenile adjudicated delinquent (for an offense that would have been a misdemeanor if committed by an adult) can be placed in detention for only sixty days.

{¶ 26} As appellant concedes, the juvenile law specifies a maximum sentence of ninety days in detention. R.C. 2152.04. See, also, R.C. 2152.19(A)(3) (effective after this case but keeping the ninety days in detention as the maximum). Other dispositional options are also available that differ from the adult criminal law. R.C. 2152.19. The juvenile law does not distinguish between various types of misdemeanors. Along these lines, a key phrase is "if committed by an adult." Appellant was adjudicated a delinquent due to committing criminal negligence, an act that would be a third-degree misdemeanor "if committed by any adult."

{¶ 27} Additionally, when speaking of more serious delinquent acts, the juvenile law also explicitly varies from the adult criminal law. For instance, a child can be sentenced to the Ohio Department of Youth Services for an indefinite term of six months to age twenty-one for an act that would be considered a third-, fourth-, or fifth-degree felony if committed by an adult. R.C. 2152.16(A)(1)(e). These ranges vary from those allowable for adults convicted of these levels of offenses. Appellant proffers no legitimate argument as to why this framework is not permissible in the juvenile law.

{¶ 28} In conclusion, the court did not err in failing to limit its sentence by the maximum set forth for adults convicted of third-degree misdemeanors. Accordingly, this assignment of error is overruled.

{¶ 29} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Judgment affirmed.

GENE DONOFRIO and DEGENARO, JJ., concur.