OPINION
{¶ 1} Monte Phipps was convicted of attempting to commit sexual contact with a minor and importuning. He was sentenced to eighteen months in prison and he was determined to be a sexual predator. In two separate assignments, Phipps contends the trial court erred in classifying him as a sexual predator and erred in sentencing him to consecutive ten month and eight month sentences.
 {¶ 2} R.C. 2950.01(E) defines a sexual predator as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." In the instant case, Phipps' conviction of attempting to commit unlawful sexual conduct with a minor and importuning constitute the requisite sexually oriented offenses. See R.C. 2950.01(D).
 {¶ 3} In determining whether Phipps is also likely to engage in future sexually oriented offenses, a trial court is required to consider "all relevant factors," including but not limited to the following factors specifically enumerated in R.C.2950.09(B)(3):
 {¶ 4} "(a) The offender's age;
 {¶ 5} "(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 6} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 {¶ 7} "(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 {¶ 8} "(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 9} "(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 {¶ 10} "(g) Any mental illness or mental disability of the offender;
 {¶ 11} "(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 12} "(I) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty; and
 {¶ 13} "(j) Any additional behavioral characteristics that contributed to the offender's conduct."
 {¶ 14} This list is non-exhaustive and permits the trial court to consider any other evidence or factor that it deems relevant to determining an offender's likelihood of recidivism.State v. Thompson (2001), 92 Ohio St.3d 584, 2001-Ohio-1288,752 N.E.2d 276, paragraph one of the syllabus. When considering the factors set out in R.C. 2950.09(B)(2), the trial court also has the discretion to determine what weight, if any, it will assign to each given factor. Id. Because some factors may not apply in a given case, "a factor irrelevant to a particular offender is entitled to no weight." State v. Burton (Sept. 28, 2001), Montgomery App. No. 18606.
 {¶ 15} In finding Phipps to be a sexual predator, the trial court noted that Phipps had two prior juvenile adjudications involving sex offenses, gross sexual imposition at age 11 and attempted felonious assault at age 13. Phipps explained to Dr. Barbara Bergman, a clinical psychologist, who performed an evaluation of Phipps, that the first offense involved forcing a five year old boy to commit fellatio upon him. He further told Dr. Bergman that the second offense occurred while he was in a juvenile treatment facility and involved the attempted rape of an adult staff member. The instant offense involved a fourteen year old girl who Phipps importuned over the internet when he was twenty-one. The victim was a cousin of Phipps' nineteen year old girlfriend.
 {¶ 16} Phipps was sent to a residential treatment center following the delinquency adjudication for gross sexual imposition where he was involved in a sex offender treatment program. After he was found delinquent for the felonious assault, Phipps was committed to a Maumee Youth Camp under the auspices of the Department of Youth Services. No further sexual offender treatment was provided to him at that location.
 {¶ 17} Dr. Bergman stated the fact that Phipps committed other sexual offenses after receiving sexual offender treatment and after being incarcerated was a significant risk factor for recidivism. Dr. Bergman said that Phipps' choice of victims of different ages and genders suggested a high risk for re-offending. She said she administered the Static-99 risk assessment instrument which utilizes static factors that have been identified in sex offender recidivism research literature to be strongly correlated with sexual offense reconviction in adult males to Phipps. She said Phipps scored a 7 which placed him in the high risk category relative to other adult male sex offenders. Dr. Bergman said Phipps's age (21) placed him in the age range that is statistically at a higher risk for recidivism. (Upper limit is usually 30 years of age). Finally, Dr. Bergman expressed her opinion that Phipps posed a high risk for recidivism. On cross-examination, Dr. Bergman said that Phipps' judgment was poor and was characterized by self-centeredness and emotional immaturity. Dr. Bergman admitted that Phipps did not have an antisocial personality disorder. She opined, however, that Phipps' offending at an early age increased his risk of recidivism. She said Phipps' score on the Static 99 instrument placed him in the high risk category, that is, thirty-nine percent in his category reoffended after five years.
 {¶ 18} In finding Phipps to be a sexual predator, the trial court found that Phipps' sexual conduct at such a young age was a high indicator of recidivism. Also the trial court found that age and gender of Phipps' victims suggested Phipps was indiscriminate in the victim he chose. The court also found it significant that Phipps had sexual offender treatment, but chose not to use the strategies taught to avoid inappropriate sexual conduct. The court also found that Phipps was likely to reoffend because he was not remorseful. The court noted that Phipps' score on the Static-99 risk assessment tool was significant particularly in light of the fact many sex offenders go undetected by authorities.
 {¶ 19} Phipps argues the evidence presented that he is a sexual predator was not based on clear and convincing evidence. He notes that Dr. Bergman never inquired of him or the treatment facility what sexual offender treatment he received when he was eleven years old. Phipps notes that Dr. Bergman acknowledged that human development is very significant between the ages of 13 and 21 years of age. Phipps also notes that Dr. Bergman did not credit his two and one-half year relationship with his girlfriend in grading him on the Static-99 instrument. He also notes there was no evidence that his sexually oriented offenses involved "multiple" victims and there was no indication he used drugs or alcohol to impair his victims. Neither was there evidence, he argues, of cruelty or threats to his victims.
 {¶ 20} We agree with the State's argument that there was sufficient evidence to support the trial court's finding that Phipps is a sexual predator. It is clear that the trial court considered all the relevant factors set out in R.C.2950.09(B)(2). It is also clear that the court carefully considered the testimony of Dr. Bergman who concluded that Phipps met the statutory definition of a sexual predator, that he was likely to engage in the future in one or more sexually oriented offenses. Although a trial court is not required to accept a clinical psychologist's opinion on the predator classification, the court should explain why it refuses to accept that conclusion. State v. Randall (2001), 141 Ohio App.3d 160. Although the trial court noted that several of the statutory factors were not present in the facts presented to the court, the trial court stated it was particularly concerned about Phipps' aberrant conduct at such a young age and the indiscriminate selection of his victims. The court was also concerned that Phipps was unremorseful and unsuccessful in controlling his behavior after undergoing sexual offender treatment. The court was also concerned that Phipps as an adult fantasized for such a long period over having sex with a fourteen year old child. A trial court may find an offender to be a sexual predator even if only one or two statutory factors are present, so long as the totality of the relevant circumstances provide clear and convincing evidence that the offender is likely to commit more sexually oriented offenses. The first assignment of error is overruled.
 {¶ 21} In his second assignment, Phipps contends his sentences were imposed contrary to law.
 {¶ 22} Phipps was convicted of two fifth degree felonies. Fifth degree felonies carry with them a prison term of six to twelve months. R.C. 2929.14(A)(5). Phipps was sentenced to ten months for the attempt to commit unlawful sexual conduct with a minor and eight months for importuning, to be served consecutively, for a total of an eighteen-month prison term. Phipps argues that his sentence is contrary to law because it was consecutive and because the court erred in failing to indicate that it first considered imposing the minimum sentence.
 {¶ 23} The Ohio Supreme Court held that a trial court must impose a minimum sentence for first-time imprisonment unless it specifies on the record that the shortest prison term will demean the seriousness of the conduct or will not adequately protect the public from future crime by the offender. State v. Edmonson
(1999), 86 Ohio St.3d 324, 325, 1999-Ohio-110. Phipps argues that the trial court failed to make these necessary findings prior to sentencing him to more than the minimum because this was his first adult conviction. However, the State argues that a trial court is not obligated to impose the minimum sentence when a defendant has previously been imprisoned.
 {¶ 24} The Eleventh and Twelfth appellate districts have held that juvenile adjudications may be considered prior "convictions" for purposes of imposing non-minimum, maximum and consecutive sentences. See, State v. Mendenhall (May 20, 2004), Ashtabula App. No. 2003-A-0116 and State v. Lamberson (March 29, 2001), Madison App. No. CA 2000-04-012. The First Appellate District has held to the contrary in State v. Montgomery,159 Ohio App.3d 752, 2005-Ohio-1018. We agree with the First District that juvenile adjudications are not convictions for sentencing purposes.
 {¶ 25} The State argues that the trial court explained why a minimum sentence for Phipps' first time imprisonment would not adequately protect the public from future crime by Phipps. We agree that the trial court did provide its reasons for reaching that conclusion.
 {¶ 26} In examining whether the imposition of a consecutive sentence was proper, R.C. 2929.14(E)(4) provides guidance. Trial courts "may not impose consecutive sentences for multiple offenses unless it `finds' three statutory factors." Comer,
supra at 466. "First, the court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. Second, the court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Third, the court must find the existence of one of the enumerated circumstances in R.C. 2929.14(E)(4)(a) through (c)." Id., internal citations omitted. The circumstances listed in R.C. 2929.14(E)(4) provide:
 {¶ 27} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 28} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 29} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 30} R.C. 2929.14(E)(4)(a) and (b) have no application to the facts before the court. Subsection (c), that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender, does apply to Phipps' situation. In State v.Walls, 96 Ohio St.3d 437, 2002-Ohio-5059, the Ohio Supreme Court upheld the defendant's conviction for an aggravated murder which occurred while he was a minor. Justice Cook wrote as follows at page 445 and 446 of the Court's opinion:
 {¶ 31} "Walls invokes the first category of ex post facto laws by emphasizing his age at the time of the murder. Because Walls was only 15 years old at the time of the offense, he maintains that his conduct was `a civil delinquency act and remained a civil delinquency act unless and until the Juvenile Division held a proper bind-over proceeding resulting in [Walls] being bound over to the adult justice system.' (Emphasis sic.) Walls therefore concludes that the amended statutes, as applied to him, impermissibly transformed a `civil delinquency act' into a criminal offense.
 {¶ 32} "It is true that this court has characterized juvenile proceedings as civil rather than criminal. See In re Anderson
(2001), 92 Ohio St.3d 63, 65, 748 N.E.2d 67. But the `civil' label traditionally attached to juvenile matters does not lead a fortiori to a conclusion that Walls's act was not `criminal' at the time he committed it. `[D]etermining the relevance of constitutional policies, like determining the applicability of constitutional rights, in juvenile proceedings, requires that courts eschew "the `civil' label-of-convenience which has been attached to juvenile proceedings." In re Gault (1967),387 U.S. 1, 50, 87 S.Ct. 1428, 18 L.Ed.2d 527], and that "the juvenile process * * * be candidly appraised." [Id. At 21, 87 S.Ct. 1428,18 L.Ed.2d 527].' Breed v. Jones (1975), 421 U.S. 519, 529,95 S.Ct. 1779, 44 L.Ed.2d 346."
 {¶ 33} Phipps' conduct of committing gross sexual imposition and felonious assault was certainly criminal in nature despite the fact his juvenile adjudication did not result in a criminal conviction.
 {¶ 34} Additionally, a trial court must comply with R.C.2929.19(B) in order to impose consecutive sentences.99 Ohio St.3d at 467. A trial court must not only orally state the findings and its reasons on the record at the sentencing hearing, but the duty to make the findings is separate and distinct from the duty to give reasons for selecting consecutive sentences. Id. At 467 and paragraph one of the syllabus.
 {¶ 35} The trial court did just that. The court considered the recidivism factors and explained that Phipps had the opportunity for treatment, was incarcerated and was on probation and re-offended anyway. The court held that "consecutive sentences are necessary to protect the public and punish the offender. It is not disproportionate to the conduct and the danger the offender poses." The court went on to say, "I believe the harm is so great that a single term does not adequately reflect the seriousness of the conduct. And the offender's — the Defendant's criminal history as a juvenile shows that consecutive sentences are necessary to protect the public." (Tr. 100-101).
 {¶ 36} The second assignment of error must be overruled. The judgment of the trial court is Affirmed.
Grady, J., and Young, J., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio)