JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Jeffrey Block appeals from his conviction for intimidation. For the reasons set forth below, we affirm.
 {¶ 2} On June 8, 2005, defendant was indicted for one count of intimidation of a witness in a criminal case. Defendant pled not guilty and waived his right to a jury trial. The matter proceeded to trial to the court on October 14, 2005. For its case, the State presented the testimony of Karen Sefcik, Pamela Gorka, Nicole Gorka, and Parma Police Det. Mickey Adams and Officer James Manzo.
 {¶ 3} Karen Sefcik testified that on April 28, 2005, her son asked her to call the police because there was a fight nearby on Grantwood. Sefcik went to the area but the police had already broken up the fight and only a few people remained in the area. The police asked them to leave but they refused to do so. One girl in particular refused to leave and started laughing. An officer asked, "Do you think it's funny" and she said "yeah." The police warned her that if she did not leave, they would call her parents and they would have to pick her up from the police station or she would be arrested right there. According to Sefcik, the girl continued to laugh. The officer went to grab her and "the girl became very verbal and started hitting the police officer."
 {¶ 4} Later that evening, the officers called Sefcik's home, then met her at a bowling alley and took a written statement from her. Approximately one week later, after her children had left for school, Sefcik realized that her daughter had forgotten her homework, so she called her neighbor, Karen Gorka. Gorka agreed to send Nicole Gorka over to pick up the homework.
 {¶ 5} Defendant then approached in a truck. He parked in front of her neighbor's yard then stood on her sidewalk and asked Sefcik if she lived there and if she was affiliated with the police or married to a policeman. Sefcik indicated that she was not. Defendant then accused her of lying in her police statement and claimed that the police had assaulted his daughter in the incident at Grantwood.
 {¶ 6} According to Sefcik, defendant was waving a piece of paper and stated that he knew that she had a son who attends Shiloh Elementary School. Sefcik stated that he called her an "F — ing liar" and said that if it's the last thing he does, he's going to get her for lying on the police report. Sefcik believed that defendant had a gun because he kept reaching behind his back. She was afraid and asked Gorka to call police.
 {¶ 7} On cross-examination, Sefcik admitted that a police officer owns the bowling alley where she works. She also admitted that she stood her ground with defendant when he called her a liar.
 {¶ 8} Pamela Gorka testified that she lives next to Sefcik. On the morning of the incident, Sefcik called her, explained that her daughter had forgotten to bring her homework to school and asked Gorka to bring it to school for the girl. Gorka's daughter, Nicole, went to Sefcik's house and Gorka waited in the driveway in her van. Gorka observed defendant on the apron of Sefcik's driveway, yelling and waving a piece of paper. Gorka pulled her vehicle further back and motioned for Nicole.
 {¶ 9} Nicole excitedly explained that the man was the father of the girl who had gotten arrested in the April 28, 2005 incident. Gorka heard the man tell Sefcik that he knew that she had a son at Shiloh Elementary School. Sefcik looked upset and asked Gorka to call the police. Gorka did not have her cell phone and proceeded out to the street. Nicole realized that she had forgotten her shoes and Gorka then returned to the driveway. Defendant was still yelling at Sefcik then walked to a truck parked nearby, revved the engine and sped away.
 {¶ 10} Nicole Gorka, a fourth grader at Shiloh Elementary School, testified that Melissa Sefcik, who also attends Shiloh, forgot her homework and she went to Sefcik's porch to get it. Defendant approached, and angrily asked Sefcik if she had a child who attended Shiloh. Sefcik looked scared and did not yell back. Nicole testified that when she returned to the area to get her shoes, she heard defendant tell Sefcik that he would "get her for this." Nicole thought that defendant had a gun because he kept putting his hand behind his shirt, but she admitted that this is not contained in her statement to police.
 {¶ 11} Det. Mickey Adams testified that he conducted a follow-up interview of defendant following his arrest and that defendant admitted to going to Sefcik's home with a copy of her police report. A search was executed at defendant's house and ammunition was recovered from the garage.
 {¶ 12} Officer Manzo testified that he responded to a call at Sefcik's house but arrived after defendant had already left. Sefcik was frightened, and was crying and shaking. Manzo also spoke to Gorka and subsequently went to defendant's home where Gorka and Sefcik identified him.
 {¶ 13} On cross-examination, Manzo admitted that his report simply indicates that defendant said that he would "get" Sefcik; it does not indicate that he threatened to "get her if it's the last thing I do." It likewise does not indicate that Sefcik believed that he had a gun.
 {¶ 14} Defendant elected to present evidence and his wife Susan Block testified that defendant is on disability from a 1999 injury and takes several kinds of medication. Block further testified, with regard to the April 28, 2005, incident that she learned that a friend of her daughter, Rachel, called her and said that the police had beat up and arrested Rachel. She immediately went to the police station to get her daughter.
 {¶ 15} According to Block, Rachel was terrified, dirty, and had marks on her face and bruises on her wrists, and the police would not give her much information about what had happened. Block took the girl to an urgent care center.
 {¶ 16} Block subsequently requested a copy of the police report and obtained an incident report as well as witness statements. Block testified that she wanted to speak with Sefcik because her report differed from what the children had told her of the incident. Later, she spoke to defendant and learned that he went to Sefcik's house and had been arrested.
 {¶ 17} Defendant was convicted and sentenced to two years of community control sanctions. He now appeals and assigns the following two interrelated errors for our review.
 {¶ 18} Defendant's assignments of error state:
 {¶ 19} "The trial court erred in denying appellant's motion for acquittal based on the state's failure to prove an essential element of O.R.C. 2921.04."
 {¶ 20} "The trial court erred in denying appellant's motion for acquittal when there was insufficient evidence to support a conviction under [R.C.] 2921.04."
 {¶ 21} Motions for judgments of acquittal are governed by Crim.R. 29(A) which states that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 22} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v.Thompkins, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541. In reviewing for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The motion "should be granted only where reasonable minds could not fail to find reasonable doubt." State v. Apanovitch (1987),33 Ohio St.3d 19, 23, 514 N.E.2d 394.
 {¶ 23} In this matter, defendant was charged with intimidation as set forth in R.C. 2921.04(B) as follows:
 {¶ 24} "(B) No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness."
 {¶ 25} Defendant insists that the offense was not established because there was no "witness involved in a criminal action" since she was a witness to a juvenile action. He further insists that there was no evidence of "force or unlawful threat of harm."
1. "Witness Involved in a Criminal Action"
 {¶ 26} The Ohio Supreme Court has determined that "juvenile court proceedings are civil, rather than criminal, in nature."In re Anderson, 92 Ohio St.3d 63, 65, 2001-Ohio-131,748 N.E.2d 67. As such, "[a] child is not a criminal by reason of any Juvenile Court adjudication, and civil disabilities ordinarily following conviction do not attach." In re Agler (1969), 19 Ohio St.2d 70, 72, 249 N.E.2d 808.
 {¶ 27} The Court has noted, however, that the "characterization of delinquency proceedings as civil is one of limited applicability * * * [and that] "there are criminal aspects to juvenile court proceedings." In re Cross,96 Ohio St. 3d 328, 2002-Ohio-4183, 774 N.E.2d 258. Moreover, the "civil" designation does not lead a fortiori to a conclusion that the act was not "criminal" at the time it was committed. State v.Walls, 96 Ohio St. 3d 437, 2002-Ohio-5059, 775 N.E.2d 829. The Walls Court explained:
 {¶ 28} "Whatever their label, juvenile delinquency laws feature inherently criminal aspects that we cannot ignore. See Anderson, 92 Ohio St.3d at 65-66, 748 N.E.2d 67. * * * Just as we cannot ignore the criminal aspects inherent in juvenile proceedings for purposes of affording certain constitutional protections, we also cannot ignore the criminality inherent in juvenile conduct that violates criminal statutes. See former R.C.2151.02(A), now R.C. 2152.02(F)(1) (defining "delinquent child" as a child who commits an act that would be a crime if committed by an adult). Whether the state prosecutes a criminal action or a juvenile delinquency matter, its goal is the same: to vindicate a vital interest in the enforcement of criminal laws. Breed [v.Jones (1975)], 421 U.S. at 531, 95 S Ct. 1779, 44 L.Ed. 2d 346."
 {¶ 29} Thus, in delinquency matters, the conduct is "certainly criminal in nature despite the fact his juvenile adjudication did not result in a criminal conviction." State v.Phipps, Montgomery App. No. 20793, 2005-Ohio-6680. See, also,In re Tiber, 154 Ohio App. 3d 360; 2003-Ohio-5155,797 N.E.2d 161. See, also, State v. Wilson (1995), 73 Ohio St. 3d 40,652 N.E.2d 196 ("Wilson was a `child' at the time of his criminal activity.")
 {¶ 30} Moreover, when reviewing a sufficiency of the evidence supporting a delinquency adjudication, we apply the Crim.R. 29 standard. See In re Shubutidze (Mar. 8, 2001), Cuyahoga App. No. 77879; In re Sechler (Aug. 29, 1997), Trumbull App. No. 96-T-5575; In re Hedrick (Mar. 1, 2001), Adams App. No. 00CA697.
 {¶ 31} Further, in State v. Gooden, Cuyahoga App. No. 82681, 2004-Ohio-2699, this court noted that it is not necessary for a criminal proceeding to be pending in order to sustain a conviction for intimidation under R.C. 2921.04. This court affirmed a conviction for intimidation where the defendant was attempting to prevent Reeves from discharging her duties as a witness to a criminal act." (Emphasis added.)
 {¶ 32} In accordance with all of the foregoing, we conclude any rational trier of fact could have concluded that Sefcik was a "witness involved in a criminal action." Although Block's daughter was presumably facing charges in juvenile court, nothing in the record indicates that juvenile proceedings were pending at the time of the incident. The girl had allegedly assaulted a police officer and this was a criminal act, though she "was a `child' at the time of [her] criminal activity" see State v.Wilson, supra. The alleged conduct is "certainly criminal in nature despite the fact [a] juvenile adjudication [would not] result in a criminal conviction." State v. Phipps. Sefcik was nonetheless a witness to a criminal act. We will not "ignore the criminality inherent in juvenile conduct that violates criminal statutes." State v. Walls; R.C. 2152.02(F) ("delinquent child" includes a child who violates any law of this state or the United States or any ordinance of a political subdivision that would be an offense if committed by an adult.) Therefore, as a witness in such a matter, Sefcik was clearly a witness to a criminal act and the state presented sufficient evidence to demonstrate that defendant acted to prevent her from discharging her duties as a witness to that criminal act. No evidence has been presented to indicate that a juvenile proceeding was in progress at the time of the incident.
2. "Force or Unlawful Threat of Harm"
 {¶ 33} In State v. Gooden, supra, this court held that this element of the offense of intimidation was met where the threat was "clearly aimed at discouraging a witness from having any involvement in a forthcoming criminal action." Id., citing toState v. Hummell (Jun. 1, 1998), Morrow App. No. CA-851. In that matter, the defendant told the witness, "I'm telling you, you better not be out running your mouth. Because if you tell anybody about what you seen going on last night, the same thing that man got last night, you're going to get it too." Likewise, in this matter, the state presented evidence that defendant went to Sefcik's house with a copy of her statement and was yelling at her. According to Sefcik and Nicole Gorka, defendant repeatedly reached behind his back and they believed that he had a gun. He also indicated that he would "get" Sefcik. She became frightened and upset and asked for Gorka to call the police. A search warrant revealed that he had ammunition. From the foregoing, we conclude any rational trier of fact could have concluded that defendant made an unlawful threat of harm to discourage the witness from filing charges or from testifying at a later criminal proceeding. Cf. State v. Fuqua, Hardin App. No. 6-02-01, 2002-Ohio-4697 (unlawful threat of harm found where defendant told witness that he would "get him"). State v.Cheney-Shaw (Aug. 31, 2000), Cuyahoga App. Nos. 76828 and 76829.
 {¶ 34} The assignments of error are without merit.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure
Rocco, J., concurs. (See Separate Concurring Opinion)
Corrigan, J., dissents (See Separate Dissenting Opinion)