JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Toya Norris, appeals her convictions for felonious assault with three-year gun specifications. We affirm in part and remand in part for correction of the entry of conviction.
 {¶ 2} Norris was indicted on two counts of felonious assault, both with one-and three-year firearm specifications. Count one charged her with knowingly causing serious physical harm to the victim, Jamika Zackery. Count two charged her with knowingly causing or attempting to cause physical harm to Zackery by means of a deadly weapon or dangerous ordnance. Norris waived a jury trial, and the matter proceeded to a bench trial.
 {¶ 3} Norris made a Crim. R. 29 motion for acquittal at the conclusion of the State's case. The motion was denied, and Norris then testified. The defense rested and renewed its motion, which was again denied. The court found Norris guilty as indicted and sentenced her to a five-year prison term.
 {¶ 4} The trial testimony demonstrated that Zackery was driving her car in Norris's neighborhood and stopped on Norris's street. Zackery's cousin, Carmen Thomas, was the only passenger in the car. When Zackery stopped on Norris's street, Thomas, who was engaged in a long-standing feud with Norris, got out of the vehicle and approached Norris, who, along with a group of people, was outside. Norris and Thomas exchanged words and then began physically fighting each other. Zackery, who had been on the phone in the car, got out of *Page 4 
the car and approached the two in an attempt to break up the fight. Zackery testified that she was assaulted by someone in the group as she tried to end the fight.
 {¶ 5} Eventually, Zackery and Thomas got back in their car and drove away. Zackery testified that as she drove away, Norris tried to "jump" in the car on the passenger side where Thomas was seated, because she was still trying to fight Thomas. Zackery explained that she drove the car, dragging Norris, who was clinging to Thomas's arm, down the street one or two houses, until Norris presumably let go and fell off. Norris testified, however, that Thomas grabbed her by the arm, and she fell off only because Thomas let go of her arm.
 {¶ 6} Zackery and Thomas returned to the scene about a half-hour later. A group of people was still congregated outside. Zackery testified that she and Thomas returned because they feared that one of their other cousins at the scene was being attacked. According to Zackery, upon arriving at the scene, she and Thomas got out of the car and started walking down the street, when Norris walked toward them shooting a gun; a bullet hit Zackery on her right foot. Zackery described Norris as "waving" the gun in the air and aimlessly firing it about three times. Zackery also testified that, although she did not get a good look at the gun, she saw the flashes as Norris fired it.
 {¶ 7} Zackery and Thomas got back in their car to leave the scene. Initially, Zackery believed that a rock had hit her foot. After looking at her foot *Page 5 
and seeing blood, she realized that she had been shot. Thomas immediately drove her to an emergency room. The bullet had shattered three metatarsals in her right foot and, as of the time of trial, bullet fragments remained in her foot, causing her pain.
 {¶ 8} Zackery testified that she told the hospital personnel that she did not know who the shooter was, because at the time, she did not know Norris by name, only by face. Zackery identified Norris in court as her assailant. The investigating detective testified that Zackery also identified Norris as her assailant from a photo array.
 {¶ 9} Norris denied having or firing a gun. She testified that she heard the shots and believed that someone behind her had fired them. The weapon was not recovered.
 {¶ 10} In her three assignments of error, which we consider together, Norris contends that the evidence was insufficient to support any crime, or alternatively, to support felonious assault, and the convictions were against the manifest weight of the evidence. More specifically, Norris contends that if she were guilty of anything, it was negligent, not felonious, assault.
 {¶ 11} Crim. R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." To determine whether the evidence before a trial court was sufficient to sustain a *Page 6 
conviction, an appellate court must view that evidence in a light most favorable to the State. State v. Dennis, 79 Ohio St.3d 421, 430,1997-Ohio-372, 683 N.E.2d 1096.
 {¶ 12} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541.
 {¶ 13} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. Thompkins at 390. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. at 387.
 {¶ 14} R.C. 2903.11(A)(1) and (2), governing felonious assault, provide: *Page 7 
 {¶ 15} "(A) No person shall knowingly do either of the following:
 {¶ 16} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 17} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 18} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 19} Norris contends that Zackery's testimony that she "wasn't shooting directly at anybody," supports, if anything, a conviction for negligent[1] assault, because the evidence does not demonstrate that she acted "knowingly," a necessary element of felonious assault. We disagree.
 {¶ 20} It is common knowledge that a firearm is an inherently dangerous instrumentality, use of which is reasonably likely to produce serious injury or death. State v. Widner (1982), 69 Ohio St.2d 267, 270,431 N.E.2d 1025. Courts have consistently held that shooting a gun in a place where there is risk of injury to one or more persons supports the inference that the offender acted knowingly. *Page 8 
See, e.g., State v. Brooks (1989), 44 Ohio St.3d 185, 192,542 N.E. 2d 636; State v. Ivory, Cuyahoga App. 83170, 2004-Ohio-2968, ¶ 6; State v.Roberts (Nov. 9, 2001), Hamilton App. No. C-000756, citing State v.Gregory (1993), 90 Ohio App.3d 124, 628 N.E.2d 86; and State v.Phillips (1991), 75 Ohio App.3d 785, 792, 600 N.E.2d 825.
 {¶ 21} In re Justin Tiber, 154 Ohio App.3d 360, 2003-Ohio-5155,797 N.E.2d 161, cited by Norris, is factually distinguishable from this case. In Tiber, the Seventh Appellant District upheld a juvenile's negligent assault delinquency adjudication. A friend was visiting the juvenile's house, and the juvenile was showing the friend his father's new gun, when it accidentally discharged and hit the friend.
 {¶ 22} Here, unlike in Tiber, the scene was a volatile one, in which many people were gathered, and there had already been a physical altercation involving Norris, Zackery and Thomas. Norris's action of firing a gun in this type of situation demonstrated that she acted knowingly.
 {¶ 23} We are also not persuaded by Norris's argument that the State failed to prove that she was guilty of any crime because Zackery told the hospital personnel that she did not know who the shooter was. Norris testified that she told the hospital personnel she did not know who the shooter was because, although she knew Norris by face, at that time, she was unaware of her name. *Page 9 
Zackery identified Norris as the shooter in a photo array and in court. Moreover, she testified that she saw Norris with a gun and saw the flashes as she fired it.
 {¶ 24} On this record, a conviction for felonious assault is supported by the sufficiency and weight of the evidence, and Norris's three assignments of error are overruled.
 {¶ 25} However, we sua sponte remand the case for correction of the conviction entry. That entry reflects convictions on two counts of felonious assault. The Ohio Supreme court has held that, "[b]ecause [a defendant's] convictions arise from a single act and animus, pursuant to R.C. 2941.25, [the defendant] may only be convicted of one form of the offense of aggravated assault." State v. Brown, 119 Ohio St.3d 447,2008-Ohio-4569, 895 N.E.2d 149, ¶ 41.[2] Here, there was only one assault and, therefore, there should only be one felonious assault conviction.
 {¶ 26} Judgment affirmed in part; case remanded for the State to elect which of Noris's two felonious assault charges will merge into the other for purposes of her conviction and sentence, and correction of conviction entry accordingly. See Brown, supra at ¶ 43. *Page 10 
It is ordered that appellee and appellant equally share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for further proceedings consistent with this opinion.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P.J., and MARY EILEEN KILBANE, J., CONCUR.
[1] "A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist." R.C. 2901.22(D).
[2] See, also, Legislative Service Commission, Summary of Am. Sub. H.B. 511, at 69, stating that pursuant to R.C. 2941.25, a defendant may be charged with multiple offenses of similar import committed with a single animus, but that he may only be convicted of one, and "the prosecution sooner or later must elect as to which offense it wishes to pursue." *Page 1