JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Harry Ollison, appeals his aggravated assault conviction and the imposition of three years postrelease control. We affirm the conviction and reverse and remand for modification of the sentencing entry to delete the imposition of three years postrelease control.
 {¶ 2} Ollison was charged in a two-count indictment with felonious assault (count one charged "knowingly cause serious physical harm," and count two charged "knowingly cause or attempt to cause physical harm *** by means of a deadly weapon or dangerous ordnance"). Ollison waived his right to a jury trial, and the case proceeded to a bench trial.
 {¶ 3} The trial testimony revealed that Ollison and his girlfriend, Barbara Williams, lived in a trailer in the city of Cleveland. There was testimony that part of the property surrounding the trailer was private, and part of it was the city's property. Ollison, however, believed all of the surrounding property was private.
 {¶ 4} Ollison and Williams were acquainted with the victim, William Moore. According to Ollison and Williams, they allowed Moore to sleep in a car on the property; Moore denied this, however. Further, according to Ollison and Williams, approximately two weeks prior to the incident that gave rise to this case, Moore broke into the trailer and stole welding torches, which prompted Ollison to tell Moore he could no longer stay on the property. Around the same *Page 4 
time, a truck owned by Ollison was lit on fire; Ollison believed Moore was responsible. Moore denied involvement with both the break-in and the fire.
 {¶ 5} The testimony revealed that after the break-in and fire, Moore's relationship with Ollison and Williams was contentious, and according to Ollison and Williams, whenever Moore was by the trailer, he would threaten them and shout obscenities. Further, according to Ollison, Moore would inappropriately touch Williams, who had some mental health issues. Moore testified that he was aware of Williams' issues.
 {¶ 6} Although Moore denied sleeping on the property, he admitted that he was often in the area and used the city's portion of the property as a short-cut to get where he was going.
 {¶ 7} On the day of the incident, Moore threatened Ollison and Williams while on the property and started walking toward them. Ollison testified that he "could not take it any longer," so he got his gun[1]
and started walking toward Moore. Ollison, Williams, and Moore all testified that Moore turned and started to walk away from Ollison when he saw him with the gun. Ollison fired the gun and hit Moore in the back of his legs. Moore left the property and called the police from a nearby pay phone. The police, along with EMS technicians, responded to where Moore was. The EMS technicians treated Moore on the *Page 5 
scene. Moore and the police then drove to Ollison's trailer, where Ollison was arrested.
 {¶ 8} Ollison testified that he was "angry" with Moore for "pestering" and touching Williams. He stated that he did not know if Moore had touched Williams on the day of the incident, but "enough was enough," so he fired the gun "intending to sprinkle him with it," but not kill him, in the hope that it would scare Moore and he would leave them alone. Ollison described that Moore would threaten him and Williams "[j]ust [like] a child, just dumb stuff," and that he viewed Moore as "[j]ust a little loud-mouth kid."
 {¶ 9} Moreover, Ollison testified, "I'm not afraid of no man. Don't put your hands on my woman. *** I work and I can take care of myself." Further, when asked by his attorney at the close of his direct examination if there was anything else he wanted to tell the court, Ollison responded, "[t]hat's my woman. I take care of her and no man be putting their hands on her."
 {¶ 10} Williams did not testify that she feared Moore on the day of the incident (or ever for that matter), and when asked if Ollison had ever expressed any fear to her about Moore, she responded "[n]o."
 {¶ 11} Defense counsel argued to the court that Ollison acted in self-defense; alternatively he argued that Ollison's conduct amounted to aggravated assault or negligent assault. *Page 6 
 {¶ 12} In his first assignment of error, Ollison contends that his conviction for aggravated assault was against the manifest weight of the evidence. In his second assignment of error, Ollison contends that the trial court erred by not finding him guilty of the lesser included offense of negligent assault.
 {¶ 13} A manifest weight challenge questions whether the prosecution has met its burden of persuasion. State v. Thompkins, 78 Ohio St.3d 380,390, 1997-Ohio-52, 678 N.E.2d 541. When considering a manifest weight claim, a reviewing court must examine the entire record, weigh the evidence and consider the credibility of witnesses. State v. Thomas
(1982), 70 Ohio St.2d 79, 80, 434 N.E.2d 1356. The court may reverse the judgment of conviction if it appears that the factfinder "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. A judgment should be reversed as against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Thompkins at 387.
 {¶ 14} The court found Ollison guilty of the lesser included offense of felonious assault (count two, "knowingly cause or attempt to cause physical harm *** by means of a deadly weapon or dangerous ordnance"), that being aggravated assault under R.C. 2903.12(A)(2). That section provides: *Page 7 
 {¶ 15} "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
 {¶ 16} "***
 {¶ 17} "(2) Cause or attempt to cause physical harm to another *** by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code."
 {¶ 18} Ollison contends that he acted in self-defense against Moore. The manifest weight of the evidence, however, supports the aggravated assault conviction. A review of Ollison's testimony demonstrates that he was not in fear of Moore; rather, he was "angry" with him and had "had enough" of him pestering and inappropriately touching Williams, who Moore knew had mental health issues. In Ollison's own words, "I'm not afraid of no man. Don't put your hands on my woman. *** I work and I can take care of myself." Further, by all accounts, Moore started to walk away when he saw Ollison coming toward him with the gun.
 {¶ 19} We are also not persuaded by Ollison's alternative argument that if he was guilty of anything, it was negligent assault.
 {¶ 20} "A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain *Page 8 
result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist." R.C. 2901.22(D).
 {¶ 21} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 22} It is common knowledge that a firearm is an inherently dangerous instrumentality, use of which is reasonably likely to produce serious injury or death. State v. Widner (1982), 69 Ohio St.2d 267, 270,431 N.E.2d 1025. Courts have consistently held that shooting a gun in a place where there is risk of injury to one or more persons supports the inference that the offender acted knowingly. See, e.g., State v.Brooks (1989), 44 Ohio St.3d 185, 192, 542 N.E. 2d 636; State v.Ivory, Cuyahoga App. 83170, 2004-Ohio-2968, ¶ 6; State v. Roberts (Nov. 9, 2001), Hamilton App. No. C-000756, citing State v. Gregory (1993),90 Ohio App.3d 124, 628 N.E.2d 86; and State v. Phillips (1991),75 Ohio App.3d 785, 792, 600 N.E.2d 825.
 {¶ 23} The evidence in this case demonstrated that Ollison acted "knowingly" rather than "negligently." He testified that he shot at Moore *Page 9 
"intending to sprinkle him." This was not a situation where he accidently fired the gun;[2] Ollison intended to shoot Moore, and he did.
 {¶ 24} Accordingly, the first and second assignments of error are overruled.
 {¶ 25} In his third and final assignment of error, Ollison argues that the trial court erred in imposing three years of postrelease control. The State concedes the assignment of error.
 {¶ 26} R.C. 2967.28(C) provides in pertinent part that:
 {¶ 27} "Any sentence to a prison term for a felony of the third, fourth, or fifth degree that is not subject to division (B)(1) or (3) of this section shall include a requirement that the offender be subject to a period of post-release control of up to three years after the offender's release from imprisonment, if the parole board, in accordancewith division (D) of this section, determines that a period ofpost-release control is necessary for that offender." (Emphasis added.)
 {¶ 28} Here, the court stated at sentencing that "[t]he Defendant will be advised that he will be subject to three years Post-Release Control upon release from prison." (Emphasis added.) The sentencing entry also stated that "post release control is part of this prison sentence for 3 years for above felony under R.C. 2967.28." (Emphasis added.) *Page 10 
 {¶ 29} Because the aggravated assault conviction was a fourth degree felony not subject to R.C. 2967.28 (B)(1) or (3), the trial court erred by imposing three years postrelease control.
 {¶ 30} Accordingly, the third assignment of error is sustained and this matter is remanded to the trial court to modify the sentencing entry to delete the imposition of three years postrelease control.
 {¶ 31} Conviction affirmed; reversed and remanded for modification of the sentencing entry to delete the imposition of three years postrelease control.
It is ordered that appellee and appellant equally share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P.J., CONCURS WITH SEPARATE CONCURRING OPINION; AND *Page 11 
PATRICIA A. BLACKMON, J., CONCURS WITH MAJORITY AND SEPARATE CONCURRING OPINION.
[1] Ollison already had the gun outside, placed on top of a barrel.
[2] See, e.g., In re Justin Tiber, 154 Ohio App.3d 360,2003-Ohio-5155, 797 N.E.2d 161, where the Seventh Appellant District upheld a juvenile's negligent assault delinquency adjudication. A friend was visiting the juvenile's house, and the juvenile was showing the friend his father's new gun, when it accidentally discharged and hit the friend.