[Cite as *State v. Hill-Bryant*, 2024-Ohio-962.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

    v.                                      :

COURTNEY HILL-BRYANT,          :

    Defendant-Appellant.       :

No. 112917

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 14, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-672960-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Diana G. Nassar, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Francis Cavallo, Assistant Public Defender, *for appellant.*

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Defendant-appellant Courtney Hill-Bryant ("Hill-Bryant") brings the instant appeal challenging her convictions for two counts of felonious assault. For the reasons that follow, this court affirms.

# I. Factual and Procedural History

{¶ 2} In August 2022, a Cuyahoga County Grand Jury indicted Hill-Bryant of two counts of felonious assault in violation of R.C. 2903.11(A)(2) and 2903.11(A)(1), respectively. Each count contained one- and three-year firearm specifications and a forfeiture of a weapon specification for a Glock 9 mm pistol.

{¶ 3} Both charges pertained to an incident occurring at a 7-Eleven gas station in Maple Heights, Ohio between Hill-Bryant and the victim, Scott Erdman ("Erdman"), an employee at the 7-Eleven. Hill-Bryant elected to try her charges to the bench where the following facts were adduced.

{¶ 4} Hill-Bryant entered the 7-Eleven sometime during the store's 11 p.m. rush to purchase beverages and a cup of ice. Erdman and his coworker, Mark Drodouski ("Drodouski") were working the cash registers at this time. Surveillance footage shows Hill-Bryant approaching the counter with two drinks and a bottle of water, and a brief conversation is had before she retreats from the counter and later comes back, and then begins to get visually agitated. The record is not completely illuminating as to what the argument was over, but there seems to be some consensus that it was a dispute relating to the cost of the drinks or Hill-Bryant's insistence on using multiple payment methods. Erdman testified that he overheard Hill-Bryant becoming agitated and making insulting remarks towards Drodouski and at some point, took over ringing her up. Eventually, Erdman informed Hill-Bryant that he refused to serve her and instructed her to leave. Video surveillance shows Hill-Bryant forcefully pushing the cups of liquid over the cash register,

causing them to spill everywhere and promptly leaving. Erdman testified that prior to Hill-Bryant pushing the drinks, he did not say any threatening words and was not holding anything other than a scanning gun used for ringing up purchases during the altercation.

{¶ 5} After Hill-Bryant retreated to her vehicle, Drodouski called the police department to report an assault, and Erdman followed Hill-Bryant to her vehicle to take a photograph of her license plate, intending to turn her plate number over to the police department and request that she be charged with trespassing or disorderly conduct. As he walked outside towards Hill-Bryant's black Kia with Illinois plates and raised his cell phone, Hill-Bryant shouted that she had a gun, which prompted Erdman to step backwards and put his hands in the air. The surveillance video depicts Hill-Bryant holding the gun, walking closer to Erdman, a muzzle flash, and Hill-Bryant immediately turning around and walking to her vehicle while Erdman, clearly distressed and clutching his stomach, runs towards the entrance of the 7-Eleven but is not able to make it to the door and falls. At trial, there was competing testimony suggesting that Hill-Bryant intentionally walked towards Erdman and shot him, whether directly or in her own self-defense, and testimony suggesting that Hill-Bryant was merely trying to knock the phone from Erdman's hands when the gun misfired.

{¶ 6} Detective Marcus Scott ("Det. Scott") of the Maple Heights Police Department, who was a patrolman at the time of the incident, testified that upon arrival, he observed Erdman in critical condition; he was sitting upright near the

doors to the 7-Eleven with an entry wound in his lower chest and exit wound through his back. Det. Scott and his partner, Patrolman Jochum ("Ptl. Jochum") began administering first aid. Sergeant Christopher Faunce ("Sgt. Faunce"), who was a detective at the time of the incident, processed the scene at the gas station while Det. Scott and Ptl. Jochum accompanied the victim to MetroHealth Hospital. Sgt. Faunce testified that he recovered two cups, a cell phone left on the counter, and a round nose copper jacketed bullet in the parking lot where the shooting occurred. He also obtained the surveillance footage from 7-Eleven's security system. While reviewing the surveillance footage, Sgt. Faunce specifically noted that Hill-Bryant was pulling back the slide of the gun. While on scene, central dispatch notified Sgt. Faunce that Hill-Bryant had contacted the police station to report the shooting and was on her way to give an interview. Sgt. Faunce returned to the station to interview her, where she also produced a written statement. At the time, Hill-Bryant maintained that she had gotten into an altercation with the staff at 7-Eleven, and when she tried to hit the phone out of Erdman's hand, her gun misfired which she supported by stating that she discovered the casing from the fired round stuck in the firearm, which she threw out of the window while leaving the scene. She was initially evasive as to the whereabouts of the gun but eventually allowed the officers to search her phone, which clued them into where the gun was located.

{¶ 7} Sgt. Faunce testified that the gun was recovered from an individual named Davon Jessup ("Jessup"). After finding a relevant text message on Hill-Bryant's phone, Sgt. Faunce, Det. Scott, and Ptl. Jochum went to a home on East

140th Street in Cleveland, Ohio and Jessup handed over the gun without incident. The weapon was tested and found to be fully operational.

{¶ 8} Police also discovered that Jessup was in the passenger seat of the vehicle at the time of the incident, though they never took a statement from him. At trial, he testified that he was accompanying Hill-Bryant as she completed her DoorDash deliveries. Jessup testified that Erdman was aggressive when he came outside and that Hill-Bryant, when reaching into her vehicle, expressed that she was scared. He also testified that after Hill-Bryant grabbed the gun, Erdman was "fidget[ing] at his belt line." (Tr. 347.) While viewing the surveillance video, Jessup testified that he observed Hill-Bryant swing her gun, and then it went off.

{¶ 9} Hill-Bryant testified in her own defense. At the time of this incident, she was licensed to carry a concealed weapon and took the necessary training to receive the license. She called that on the night of the incident, she had just completed several DoorDash deliveries then proceeded to the 7-Eleven with Jessup to get drinks and a cup of ice. When she saw that she was going to be charged for the cup of ice, she left the register area to fill the cup with lemonade and testified that from this point forward, both Drodouski and Erdman were being rude to her. She also testified that she requested to pay "with the debit card, credit card, and the rest of the change that was in my wallet" and the two clerks did not respond to that favorably. (Tr. 394.) Hill-Bryant testified that as things became more heated, Erdman stated, "Bitch, I can refuse your service. I don't have to service you." (Tr. 394.) When she questioned what she had done for him to refuse service, Erdman

turned around and said the N-word to her at which point she "popped the drinks down," which she clarified meant that she pushed them off of the counter and left the store. (Tr. 396.)

{¶ 10} Hill-Bryant left her phone on the counter. She testified that she left her phone behind because she was nervous when she noticed Erdman coming from behind the counter and apparently instructed him not to follow her outside and to leave her alone. She removed her gun from her vehicle because he was threatening to "beat" her and threatening to put her in jail. She testified that as she had the gun in her hands and walked towards him, he put his hands up. Her intent was to knock the phone out of his hands, but she was waving the gun and telling him to go back in the store. She testified that she did not intend to shoot Erdman, that her finger never touched the trigger, that she did not know that she shot him, and that she believes the gun misfired and she realized that when she discovered an empty shell in the gun's chamber.

{¶ 11} Erdman testified that he had spent more than a month at MetroHealth Hospital before he was transported to a rehabilitation center. He received eight surgeries in the first two weeks and has had several surgeries and/or procedures since then. Erdman's right kidney, gallbladder, and spleen were removed, as well as a portion of his liver. He also endured several complications from the surgeries, including an infection.

{¶ 12} At the conclusion of trial, the court found Hill-Bryant guilty of both charges and all specifications. Hill-Bryant waived the presentence-investigation

report. At sentencing, the trial court merged Count 2 into Count 1 and, pursuant to the Reagan Tokes Law, sentenced Hill-Bryant to two to three years in prison on the underlying felonious assault offense, to be served after serving each of the 3-year mandatory firearm specifications, for a total sentence of eight to nine years. The court also ordered that Hill-Bryant forfeit the Glock 9 mm pistol.

{¶ 13} Hill-Bryant timely appealed her convictions, assigning four errors for our review.

> I. There was insufficient evidence produced at trial to support a finding of guilt on all counts.

> II. The trial court lost its way by finding the defendant guilty against the manifest weight of the evidence.

> III. The trial court committed plain error by permitting the state's witness to testify as an expert without having been qualified under Evid.R. 702(C).

> IV. Appellant was denied her right to the effective assistance of counsel under the Sixth Amendment.

## II. Law and Analysis

### A. Manifest Weight and Sufficiency

{¶ 14} Hill-Bryant's first and second assignments of error assert that her convictions were against the manifest weight of the evidence and based on insufficient evidence.

{¶ 15} To convict Hill-Bryant of two charges of felonious assault under R.C. 2903.11(A)(1) and (2), the state was required to present evidence demonstrating that Hill-Bryant knowingly "cause[d] serious physical harm to another" and "cause[d] or

attempt[ed] to cause physical harm to another * * * by means of a deadly weapon[.]"

In contesting both the manifest weight and sufficiency of the evidence, Hill-Bryant contests the state's evidence going to the mens rea of the crime. Specifically, Hill-Bryant argues that the state's evidence was insufficient to prove that she acted "knowingly" and that the manifest weight of the evidence presented indicates that she did not act knowingly. R.C. 2901.22(B) defines "knowingly" as follows:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶ 16} A challenge to the sufficiency of the evidence and the weight of the evidence are two distinct legal concepts with different standards of review. *State v. Jordan*, Slip Opinion No. 2023-Ohio-3800, ¶ 15, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph two of the syllabus. "While both challenge the strength of the evidence, '[a] challenge to the sufficiency of the evidence attacks its adequacy * * * while a challenge to the weight of the evidence attacks its persuasiveness * * *.'" *Id.*, quoting *Disciplinary Counsel v. Smith*¸152 Ohio St.3d 337, 2017-Ohio-9087, 96 N.E.3d 234, ¶ 23.

{¶ 17} A sufficiency challenge views evidence in a light most favorable to the prosecution, and the relevant inquiry is whether "any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." *State*

*v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "A verdict should not be disturbed on appeal unless reasonable minds could not reach the trier of fact's conclusion." *Jordan* at ¶ 16, citing *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 74.

{¶ 18} Hill-Bryant argues that the state's evidence was insufficient to prove that she acted "knowingly" because that state's theory that "simply waving around a loaded firearm carried a foreseeable risk, therefore any discharge would represent legally culpable conduct" was not supported by the evidence. Hill-Bryant cites Det. Scott's testimony that the type of gun that Hill-Bryant brandished does not, and cannot, go off by accident, and so Hill-Bryant could not have reasonably believed that the gun would have gone off just from waving it in the air.

{¶ 19} We find, however, that a reasonable trier of fact could have found that Hill-Bryant acted knowingly based on the evidence presented. Evidence adduced at trial could have led a factfinder to conclude that Hill-Bryant was agitated and stormed out of the 7-Eleven; she was upset that Erdman was taking photos of her vehicle; she retreated from Erdman to her vehicle to retrieve a deadly weapon that she was trained to use and knew the risks of using; she pulled the slide back on the weapon; she walked towards Erdman waving the gun; the muzzle flashed; and she walked back to her vehicle and drove away as Erdman ran towards the door clutching his stomach.

{¶ 20} Hill-Bryant's convictions were not based on insufficient evidence as to whether she acted knowingly; her first assignment of error is overruled.

{¶ 21} In reviewing whether a bench trial judgment is against the manifest weight of the evidence, the appellate court reviews the entire record and "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trial court] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reversal on manifest weight grounds is therefore reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 22} This court has previously analyzed the relationship between a "knowingly" as a state of mind and the use of a gun. "The mental element of knowledge does not require an inquiry into the purpose for an act, but, involves the question of whether an individual is aware that his or her conduct will probably cause a certain result or will probably be of a certain nature." *In re F.D.*, 8th Dist. Cuyahoga No. 102135, 2015-Ohio-2405, ¶ 16, citing *State v. Anderson*, 10th Dist. Franklin No. 06AP-174, 2006-Ohio-6152, ¶ 43. It is common knowledge, especially for one who has been trained to carry a concealed weapon, that a firearm is an inherently dangerous instrumentality that is reasonably likely to produce serious injury or death. *State v. Norris*, 8th Dist. Cuyahoga No. 91000, 2009-Ohio-34, ¶ 20, citing *State v. Widner*, 69 Ohio St.2d 267, 270, 431 N.E.2d 1025 (1982).

{¶ 23} In her manifest weight challenge, Hill-Bryant maintains that the trial court lost its way in concluding that Hill-Bryant acted "knowingly" in causing harm

to Erdman. Hill-Bryant points to the video surveillance, and the fact that she did not assume a straight-arm stance or take specific aim at Erdman with the gun; she maintains that the video supports her testimony that the gun discharged by accident because she was merely waving it at Erdman, clearly showing that she intended to knock the phone from his hands, not discharge her weapon.

{¶ 24} We agree that this evidence is clearly present in the record. However, we also find that the record supports a finding that Hill-Bryant indeed acted "knowingly." The evidence in the record shows Hill-Bryant taking affirmative actions in taking out and using her gun. She went to the car to retrieve her gun; she pulled the slide back; she brandished it and waved it towards Erdman; she stepped towards Erdman while holding the gun; and testimony adduced regarding the specific gun indicates that it is not capable of misfiring and that one must pull the trigger to activate the gun. Further, acting "knowingly" includes "[having] knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). Hill-Bryant was educated on gun safety and admitted that one should not get out a firearm unless they intend to use it.

{¶ 25} Whether to believe that Hill-Bryant's gun misfired and that the assault was accidental was within the purview of the trial court. However, the evidence in the record demonstrates that the court could have reasonably found that Hill-Bryant's actions were not the result of a misfire or accidental in nature. We cannot conclude that this is the rare case where the trial court lost its way in finding that Hill-Bryant acted knowingly.

{¶ 26} Hill-Bryant's second assignment of error is overruled.

## B. Evid.R. 702(C) Expert

{¶ 27} In her third assignment of error, Hill-Bryant argues that Det. Scott's testimony about the characteristics of the weapon was improper because the state did not properly offer him as an expert pursuant to Evid.R. 702(C).[1] Hill-Bryant acknowledges that her trial counsel did not object and, therefore, has waived all except plain error and argues that to the extent this was error, it was plain error because the issue of accidental discharge versus deliberate firing of the weapon was a key distinction and that without Det. Scott's testimony, "the [s]tate would have had nothing with which to contradict Ms. Hill-Bryant's testimony that the shot was fired by accident."

{¶ 28} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Crim.R. 52(B). In reviewing a record for plain error, "[t]he appellate court must examine the error asserted by the defendant-appellant in light of all of the evidence properly admitted at trial and determine whether the [trial court] would have convicted the defendant even if the error had not occurred." *State v. Slagle*, 65 Ohio St.3d 597, 605, 605 N.E.2d 916 (1992).

{¶ 29} Under Evid.R. 701, "courts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must

---

[1] Evid.R. 702(C) states that "[a] witness may testify as an expert if all of the following apply: * * * The witness' testimony is based on reliable scientific, technical, or other specialized information * * *."

be qualified under Evid.R. 702." *State v. Primeau*, 8th Dist. Cuyahoga No. 97901, 2012-Ohio-5172, ¶ 74, citing *State v. McKee*, 91 Ohio St.3d 292, 744 N.E.2d 737 (2001). This court has, at several points, concluded that if testimony is "based on an officer's training and experience, related to the officer's personal observations during an investigation, and helpful to determine facts in issue, the testimony is properly admitted as lay testimony under Evid.R. 701." *State v. Harris*, 8th Dist. Cuyahoga No. 108624, 2020-Ohio-4461, ¶ 53; *State v. Maust*, 8th Dist. Cuyahoga No. 103182, 2016-Ohio-3171, ¶ 18.

{¶ 30} Evid.R. 701 allows lay witness testimony "in the form of opinions or inferences" only if it is limited to "those opinions or inferences which are (1) rationally based on the perception on the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

{¶ 31} Det. Scott testified that he had 11 years of experience as a police officer. He attended a field training program; multiple different law enforcement schools and was current with his continued professional training. He is a certified OPOTA firearms instructor, which he explained involved a two-week course and that he is now responsible for certifying all of the Maple Heights officers "in yearly qualifications and any additional training we participate in." (Tr. 234.) He became a firearms instructor six years ago, and in addition to the Maple Heights officers, he has instructed the S.E.A.L.E. community.

{¶ 32} Regarding this incident, Det. Scott testified that he accompanied Det. Faunce when the firearm was recovered and admitted on cross-examination that he

did not know if the firearm obtained from Jessup was the weapon used to harm Erdman. Nonetheless, he was familiar with the gun that was recovered and testified that this gun would not fire if it was not cocked and that "[i]f you do not, in laymen's terms, wrap the slide, which will pull around from the magazine into the chamber of the weapon, the gun will not fire even with a fully-loaded magazine." (Tr. 244.) He testified that Glocks are inherently safe firearms that will not fire unless the trigger is manipulated or pulled.

{¶ 33} The testimony that Hill-Bryant attempts to raise as plain error fits squarely within both prongs of Evid.R. 701. Det. Scott offered testimony rationally based on his perceptions as a trained firearms instructor that was helpful to understanding whether the weapon recovered from Jessup's home could have misfired or fired without manipulating the trigger. Det. Scott generally offered his opinions on the specific Glock recovered from Jessup's home, without knowledge as to whether that was the gun that Hill-Bryant actually wielded. We therefore cannot conclude that Det. Scott's testimony was of the sort that, if disregarded, would have resulted in a different outcome.

{¶ 34} There is no plain error. Hill-Bryant's third assignment of error is overruled.

### C. Ineffective Assistance of Counsel

{¶ 35} In her final assignment of error, Hill-Bryant argues that she received ineffective assistance of trial counsel when her trial counsel failed to object to non-expert testimony regarding the firearm and presented two simultaneous theories of

defense that were mutually exclusive – that Hill-Bryant was acting in self-defense and that the firearm misfired.

{¶ 36} To establish a claim of ineffective assistance of counsel, Hill-Bryant must demonstrate that her trial counsel's representation was deficient, and that the deficient performance was prejudicial. *State v. Jones*, 8th Dist. Cuyahoga No. 102260, 2016-Ohio-688, ¶ 14, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish that counsel was deficient, appellant must demonstrate that defense counsel's performance fell below an objective standard of reasonableness. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). To establish that counsel's deficient performance was prejudicial, appellant must demonstrate that there exists a reasonable probability that, were it not for counsel's errors, the results of the proceeding would have been different. *State v. White*, 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998). A reviewing court must give great deference to counsel's performance in reviewing an ineffective-assistance-of-counsel claim. *Strickland* at 689. "A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 69, citing *Bradley* at 141.

{¶ 37} Counsel's decisions relating to strategy are granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers. *State v. Edgerson*, 8th Dist. Cuyahoga No. 101283, 2015-Ohio-593, ¶ 6. If tactical or strategic trial decisions are unsuccessful,

that does not generally constitute ineffective assistance of counsel. *Id.*, citing *State v. Cossack*, 7th Dist. Mahoning No. 08 MA 161, 2009-Ohio-3327, ¶ 36.

{¶ 38} Hill-Bryant's first contention is well-settled in this district. The decision to object to a witness at trial is a matter of strategy. *State v. Hall*, 8th Dist. Cuyahoga No. 88476, 2007-Ohio-3531, ¶ 35, citing *State v. Hunt*, 20 Ohio App.3d 310, 311, 486 N.E.2d 108 (9th Dist.1984). We, therefore, do not find that trial counsel's failure to object to Det. Scott's testimony constitutes ineffective assistance of counsel.

{¶ 39} Hill-Bryant's second contention requires further analysis. While we recognize that self-defense and accident are two inconsistent theories, "some cases may warrant dual instructions on the defense of self-defense and accident[.]" *State v. Talley*, 8th Dist. Cuyahoga No. 87143, 2006-Ohio-5322, ¶ 45, citing *State v. Howe*, 9th Dist. Lorain C.A. No. 00CA007732, 2001 Ohio App. LEXIS 3305, at 7 (July 25, 2001); *State v. Barnd*, 85 Ohio App.3d 254, 260, 619 N.E.2d 518 (3d Dist.1993). "[C]ourts may occasionally find instruction on both defenses to be warranted in cases presenting certain factual scenarios[.]" *Howe* at *id.* "[C]ourts have occasionally made exceptions to this general rule and determined that jury instructions on both accident and self-defense are necessary and appropriate under certain facts[.]" *Barnd* at *id.*, citing *Accused's Right, in Homicide Case, to Have Jury Instructed as to Both Unintentional Shooting and Self-Defense*, 15 A.L.R.4th 983.

{¶ 40} Hill-Bryant's case was tried to the bench and did not involve jury instructions, but based on the foregoing caselaw, we cannot conclude that it was anything other than trial strategy for Hill-Bryant's defense counsel to allude to both theories when the evidence presented at trial signified that either could have been a possibility. The evidence adduced at trial suggesting that the gun misfired came solely from Hill-Bryant when she initially called 911, wrote her statement, gave her interview, and testified on the stand. Hill-Bryant's own testimony, however, can be construed as self-defense, especially when she indicated that she was fearful and scared when Erdman followed her to her vehicle. Additional evidence adduced at trial suggesting that this was self-defense came from Jessup, who testified that Erdman was reaching towards his waistband, which is often indicative that someone is pulling a gun or other weapon. In this specific case, where evidence of both possible defenses were presented at trial, it was acceptable for defense counsel to allude to both or either theories, especially based on the evidence presented and how the evidence was developed as trial went on. In this case, the utilization of these two defenses was nothing more than trial strategy.

{¶ 41} Based on the foregoing, we find that trial counsel's decision to refrain from objecting and instead cross-examining Det. Scott to find out that Det. Scott did not know for sure that the weapon recovered from Jessup's home was the weapon that Hill-Bryant was wielding at the gas station and trial counsel's decision to present two defense theories were both matters of trial strategy that do not constitute ineffective assistance of counsel.

{¶ 42} Hill-Bryant's final assignment of error is overruled.

### III. Conclusion

{¶ 43} Hill-Bryant's convictions were not based on insufficient evidence or against the manifest weight of the evidence. The trial court did not plainly err in allowing Det. Scott to testify as a layperson pursuant to Evid.R. 701. Finally, Hill-Bryant did not receive ineffective assistance of counsel because all of Hill-Bryant's complaints were matters of trial strategy.

{¶ 44} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, JUDGE

EILEEN A. GALLAGHER, P.J., and
ANITA LASTER MAYS, J., CONCUR